(615 P.2d 827)
No. 51,115

STATE OF KANSAS, *Appellee,* v. EDSEL GARLAND GILLEY, *Appellant.*

Opinion filed August 22, 1980.

*N. Trip Shawver,* of Wichita, for the appellant.

*Joseph O'Sullivan,* county attorney, and *Robert T. Stephan,* attorney general, for the appellee.

Before FOTH, C.J., REES and PARKS, JJ.

REES, J.: Defendant appeals his conviction on two counts of indecent liberties with a child (K.S.A. 1979 Supp. 21-3503[1][*b*]).

Except for briefly setting the background and discussion of the issues raised before us, we will not undertake recital of a summarized statement of facts.

Defendant was tried on a two-count information. The first count arose out of a "closet incident" allegedly occurring in November or December, 1977. The second arose out of a "trailer incident" allegedly occurring in March or April, 1978. The victim in each incident was defendant's stepdaughter, the daughter of defendant's wife Darlene.

Defendant argues the trial court erroneously overruled his motion for dismissal made on the ground the information upon which he was tried was unconstitutionally vague. He asserts the Sixth Amendment to the United States Constitution affords an accused the right to accusation of sufficient certainty to enable him to defend and plead acquittal or conviction in bar to future prosecution for the same offense. *United States v. Crummer,* 151 F.2d 958, 962 (10th Cir. 1945), *cert. denied* 327 U.S. 785 (1946). Defendant additionally asserts that under the information he was improperly denied the ability to offer evidence in support of a contention that he was not present, that is, the ability to present the defense of alibi. See *State v. Jones,* 204 Kan. 719, 725, 466 P.2d 283 (1970).

We have no quarrel with the constitutional principle propounded by defendant. However, it is inappropriate to view that

principle and the contention of inability to present the defense of alibi in the abstract. Defendant testified as to his version of the two incidents underlying his convictions. There was no uncertainty on his part as to the details of each incident. He forthrightly testified to his presence at both times. His simple and direct story was that neither incident involved conduct on his part that was of the criminal nature alleged.

"[T]he crucial point is whether the defendant was in any way prejudiced because of the discrepancy in dates or the manner in which the appellant was charged in the information. (*State v. Robertson,* 190 Kan. 771, 378 P.2d 37.)" *State v. Jones,* 204 Kan. at 726.

On the record before us, we do not see that the purported vagueness prejudicially affected defendant, and we fail to find the proceedings in this case are such that in the event of future prosecution there is probability of inability to assert either or both convictions as a bar. Defendant's testimony negates a contention of prejudicial deprivation of ability to present an alibi defense. We are not shown on appeal that defendant was prejudiced by having been required to defend the charges as alleged in the information.

It is said the trial court erroneously denied a mistrial upon the prosecution's elicitation from Darlene of the fact that at the time of trial the victim and Darlene's other two children were residing with an aunt under a temporary custody order entered in a juvenile proceeding. The information was elicited upon additional redirect examination of Darlene, after defendant upon recross-examination had further "opened the door" by again eliciting the fact that the children were not then residing with Darlene and the defendant. The fact that the children were with their aunt had previously come out, without objection, in both the direct and cross-examination of Darlene. Defendant established upon additional recross-examination that the temporary custody order was entered by consent and agreement. To find the testimony of which defendant complains improperly and prejudicially advised the jury of previous judicial decision on and resolution of a matter in issue is wholly speculative on the record presented. Particularly in light of the uniquely advantageous "on the scene" view of the trial judge in a case tried to a jury and the discretion afforded trial judges with respect to the necessity of declaration of mistrial, we cannot find that as a matter of law defendant's motion for mistrial was erroneously denied.

Defendant complains of the amendments to the information at the close of the evidence by which the words "lewd touching" were added by insertion. We find no error. The amendments were authorized under K.S.A. 1979 Supp. 22-3201(4). Defendant failed to demonstrate to the trial judge and has failed to demonstrate to us how the amendments were proscribed by the statutory condition that amendment of an information is permissible "if substantial rights of the defendant are not prejudiced." Prior to amendment, both counts alleged fondling. Defendant declined the proffered opportunity to reopen and present further evidence after the amendments. Instruction No. 2 required the jury to find fondling to convict defendant on the first count. Defendant's present arguments of prejudice on the thesis that dictionary definitions of fondling and touching are not descriptive of the same conduct and that his defense was purportedly directed at a denial of fondling fail to show us how he would have otherwise tried the case.

Defendant complains it was error for the trial judge to have only two parts of the direct testimony of the victim read back to the jury in response to its requests. The readbacks were identified by the jury as the testimony it wished to hear again. Not only does it not appear of record that the defendant objected to the readbacks, we are satisfied that a readback of particular testimony of a witness requested by a jury in either a civil or a criminal case does not require that in addition there must be readback of all other testimony of that witness. Defendant's attempted analogy to K.S.A. 60-232(a)(4) is unpersuasive. Both K.S.A. 22-3420(3) and K.S.A. 60-248(e) refer to "any part of the . . . evidence" desired by the jury. The trial judge provided the jury with the parts of the evidence it desired. No undue emphasis was placed upon a part of the evidence *by the trial judge.* If a jury wishes to look again at the upper right hand quadrant of a picture painted before it during trial, it may do so under both K.S.A. 22-3420(3) and K.S.A. 60-248(e). Defendant's argument is not tenable.

Defendant makes a multifaceted, if not a potpourri complaint, that the verdicts are not supported by the evidence. He first argues that the words "fondling" and "touching" as used in K.S.A. 1979 Supp. 21-3503(1)(b) are plural and require repetitious actions of more than one touch. The words "touching" or "fon-

dling" can refer to acts either plural or singular. Concededly, mere touching or fondling of a person is not sufficient to constitute a violation of the statute; the touching or fondling must be lewd and must be done with the intent to arouse or satisfy the sexual desires of the victim or the offender. Whether the physical contacts between the defendant and the victim were lewd was a question for the jury and upon our review of the record we cannot find as a matter of law they were not lewd.

Defendant's argument that there was insufficient evidence of arousal or satisfaction of sexual desire misses the point. Examination of the statute reveals that it is required there be proof of *intent* to arouse or satisfy sexual desire. Proof of *actual* arousal or satisfaction of sexual desire is not required. Intent, like any other element of a crime, may be shown by circumstantial evidence. *State v. Smith,* 4 Kan. App. 2d 149, 150, 603 P.2d 638 (1979). There was sufficient direct and circumstantial evidence to establish the requisite intent.

Lewd fondling or touching in contravention of the statute does not require contact with the sex organ of one or the other of the parties involved. *State v. Wells,* 223 Kan. 94, 97, 573 P.2d 580 (1977). Viewing the evidence in the light most favorable to the prosecution, we are convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt and accordingly the convictions are not reversible because of insufficiency of the evidence. See *State v. Voiles,* 226 Kan. 469, 473, 601 P.2d 1121 (1979); *State v. Wells,* 223 Kan. at 98.

Defendant complains that the giving of an attempt instruction was mandated by K.S.A. 21-3107. He also argues the prosecution's closing argument was improper because it included argument "about impending charges against" Darlene and because it included "inflammatory and improper remarks of the prosecutor" that exceeded the permissible bounds of fair comment. Before responding to these last contentions of defendant's, further discussion and comment is appropriate.

Whatever the motivation and however justified that motivation, it is patent the county attorney aggressively prosecuted this case at trial, and on appeal has defended the verdicts of conviction in like manner. In the brief of appellee, the county attorney describes Darlene's testimony as evasive, argumentative and perjurious. He then adds: "She has since been charged and convicted

in Reno County District Court . . . for the same testimony
she offered in the preliminary hearing of this case. She testified
substantially the same at trial." These latter statements are not
founded upon the record on appeal in the case before us and are
blatantly self-serving.

In its case in chief and in the order named, the prosecution
called as its witnesses the victim (14 years of age at the times of
the alleged offenses and 15 years of age at the time of trial), the
victim's brother (10 years of age at the time of the second alleged
offense and at the time of trial), Darlene, Richard Haflich (a Reno
County sheriff's officer), Steve Bayless (a Reno County sheriff's
officer and a cousin of the victim), and Mary Rice (a Social and
Rehabilitation Services social worker). Excluding hearsay decla-
rations and based solely upon the trial testimony of personally
perceived facts, the victim was the only witness to conduct of the
defendant supportive of defendant's conviction on the first count,
and the victim and her brother were the only witnesses to conduct
of the defendant supportive of defendant's conviction on the
second count. Haflich, Steve Bayless and Rice provided hearsay
evidence, declarations of the victim, the victim's brother, and
Darlene, concerning the two incidents. Some of this hearsay was
simple hearsay and some of it was multiple hearsay but all of it
was in the nature of declarations of the victim, the victim's
brother, and Darlene, persons present at trial and available for
cross-examination. The hearsay evidence was admissible under
K.S.A. 60-460(*a*) to prove the truth of the matter stated by the
declarants even had objections been lodged. It also was admissi-
ble verbal acts evidence going to the credibility of the declarant's
trial testimony.

With respect to commission of the charged offenses, Darlene
essentially testified at trial that she saw and knew nothing sup-
portive of defendant's convictions. This sharply and directly
contradicted the declarations attributed to her by Haflich, Steve
Bayless and Rice. Although a transcript of the preliminary hear-
ing in this case is not a part of the record on appeal, we find from
the transcribed record of a pretrial in camera conference of
counsel and the trial judge that at the preliminary hearing Dar-
lene had likewise contradicted the out-of-court declarations at-
tributed to her.

In the argument made to us in its brief, the prosecution states

the jury had to decide which of Darlene's contradictory statements was true. In the abstract this may be correct, but in reality it is not. If Darlene had not been called to testify then there would have been no materially contradictory statements of hers.

In the brief of appellee, it is said:

"The State had to call Mrs. Gilley as a witness, knowing it would probably be necessary to impeach her testimony. It was necessary to prove her to be a liar at trial and to comment upon her motives and interest in the outcome for doing so. It was necessary to argue her original statements to Det. Haflich as the most reasonable and truthful account of what occurred."

Why the prosecution *had* to call Darlene as a witness escapes us. Through the testimony of the victim and her brother the prosecution established a prima facie case against defendant on both counts. It could have rested its case in chief then. If it wished to bolster its evidence on its case in chief, it could have added the testimony of Haflich, Steve Bayless, and Rice. If it opted to rest at the conclusion of the testimony of the victim and her brother, it could have introduced the testimony of Haflich, Steve Bayless, and Rice as rebuttal evidence if defense counsel put into evidence the testimony of defendant or Darlene or both. We are not persuaded the prosecution *had* to call Darlene as a witness and prove her to be a liar. The prosecution could have passed to defense counsel the decision as to whether Darlene would be called as a witness. Regardless of when or by whom they were introduced into evidence, the jury was free to believe or disbelieve whichever, if any, of Darlene's in-court and out-of-court statements it chose.

One cannot read the trial transcript in this case and avoid the observation that Darlene was "on trial" as much as, if not more than, the defendant. Some forty percent of that part of the trial transcript reporting the testimony of the seven testifying witnesses report the questions and answers directed to and given by her. As indicated in its written argument on appeal, the prosecution persists in emphasizing the "trial" of Darlene.

Lest we be misunderstood, the defense vigorously joined in on the "trial" of Darlene. Its reason for doing so was to impugn the motive for statements Haflich, Steve Bayless, and Rice attributed to her, the victim, and the victim's brother. Yet the defense walked a tightrope. It also sought to establish through her a challenge of the credibility of and motivation for the in and

out-of-court statements and conduct of the victim, the victim's brother, Steve Bayless, and Darlene herself. Responsibility for casting extreme attention upon Darlene cannot be charged to the prosecution alone.

The trial judge expressed concern as to whether an attempt instruction was called for by the evidence. It appears he declined such an instruction reasoning that if there was evidence to support conviction of attempt it was to be found in the hearsay evidence and that that evidence had been presented on the issue of witness credibility. We find nothing in the record disclosing indication, advice, or instruction to the jury that the hearsay evidence was for the jury's evaluation of credibility. We fail to see how or why the jury should be presumed to be versed in the niceties and intricacies of such matters. But, however that may be and with the benefit of hindsight bolstered by time-consuming review of the trial testimony made in the light of instruction No. 2 and the definition of lewd fondling and touching expressed in *State v. Wells,* 223 Kan. at 97-98, we conclude failure to instruct on attempt did not constitute reversible error in this case.

What of defendant's contention that the prosecution's closing argument was improper because it included argument about impending charges against Darlene? The argument made to us on this issue in the brief of appellant is in its entirety as follows:

"On closing argument, the prosecutor stated in commenting on Mrs. Gilley's testimony:

" '[I]f and in the course of your [consideration] of her testimony you have given some thought as to maybe [in] fact she should be charged with some offense [that] you can rest assured that the thought has not also escaped me.' (TR. Closing Argument).

"Though counsel has some latitude on commenting on the evidence (*State v. Miller,* 90 Kan. 230, 133 P. 878), the above statement exceeds those bounds and speculates as to matters outside the evidence. The inference drawn from this argument is that the prosecutor is drawing up perjury charges against the witness and, therefore, to believe her testimony would be siding with a criminal. Other courts have held that the prosecutor's implication or assertion that a particular witness had committed perjury *may* furnish a basis for granting a new trial (*State v. Moran,* 99 Conn. 115, 121 A. 277, 127 ALR 1385, 1415 et seq.) or reversal (*Miller v. Nuckolls,* 77 Ark. 64, 91 SW 759; *Manning v. State,* 195 Tenn. 94, 357 SW 2d 6; 45 ALR 2d 303, 312 § 3)." Emphasis supplied.

Defendant's quotation from the trial transcript fails to inform the reader that immediately following there is reported:

"MR. SHAWVER: Objection, your Honor.
"THE COURT: Sustained."

There was no admonishment requested or given.

In *State v. Murrell,* 224 Kan. 689, 585 P.2d 1017 (1978), the prosecutor in closing argument gave his personal opinion that defendant's occupation was a hustler and a gambler. Objection was made, sustained, and the jury was admonished. On appeal, the court noted that it was improper for the prosecutor to express his personal opinion in closing argument and went on to state that:

"It is the rule in this jurisdiction that improper remarks by the prosecutor during final argument do not constitute reversible error *where the jury is admonished* to disregard them, unless the remarks are so prejudicial as to be incurable." (Emphasis supplied.) 223 Kan. at 696.

The prosecution went beyond fair comment. He patently implied his personal opinion that Darlene was a deserving object of criminal prosecution. An objection to the comment having been made and sustained, the trial court should have admonished the jury on its own initiative. Without jury admonishment, cases holding that the alleged error is cured by admonishment are not in point. The issue here becomes whether the comment was so prejudicial as to warrant a new trial. We conclude that on defendant's argument to us the comment in the context of the closing argument as a whole was not so prejudicial as to require reversal.

Lastly, we must answer defendant's claim that the prosecution's closing argument included inflammatory and improper remarks that exceeded the permissible bounds of fair comment. The arguments made in the briefs of both parties are of less than desired assistance in our resolution of the issue. From defendant's brief, it is to be gathered that objection is made to the following particular remarks only: A reference to Darlene as "the notorious Darlene Gilley"; characterization of Darlene's mental attitude subsequent to her contacts with Haflich, Steve Bayless and Rice and at trial to be "My husband, whatever he might be, I'll defend, protect, and lie for him. Even to the detriment of the children"; "a mother in this case chose to lie"; and "She's [Darlene's] turned on her children." The record reflects that immediately following the second of the four identified statements, the following transpired:

"MR. SHAWVER: Objection, your Honor. That—I don't ever remember hearing anything like that in the evidence.

"MR. O'SULLIVAN: Your Honor, that's a fair comment upon the evidence and what she did.

"THE COURT: Ladies and Gentlemen of the jury, the statements of counsel are not evidence. If you believe any statements made by counsel are not supported by the evidence, you must disregard the statement."

Upon application of the *Murrell* rule to the second of the four identified statements, it is our conclusion that that particular statement was not so prejudicial as to be incurable and therefore it does not require reversal of the convictions.

It seems *State v. Thompson,* 221 Kan. 176, 183, 558 P.2d 93 (1976), says that for a new trial to be granted for prosecutorial misconduct in argument it must be shown that the objectionable statements of the prosecutor were injurious to the defendant, and likely to affect the jurors to his prejudice, as well as error so gross and flagrant as to deny the defendant a fair trial.

We find the identified remarks were improper and cumulatively not insignificant, but upon application of the *Thompson* yardstick it is our decision in this case to deny reversal.

Failure of prosecutors to observe proper standards in closing argument and elsewhere during trial too frequently results in devotion of substantial judicial time to review of the record on appeal to determine the probable effect of the improper conduct. It may well in some case result in a reversal which could and should have been avoided by adherence to proper standards. Prosecutors should not handicap themselves in appellate defense of successful prosecutions by the attitude that to win by any means is the "name of the game." However, it clearly is not suggested that in argument the prosecutor is to be restricted to a " 'sterile recitation of uncontroverted facts.' " *United States v. Keane,* 522 F.2d 534, 560 (7th Cir. 1975).

We do not propose to now author a tome on the subject of prosecutorial misconduct in argument. However, as a first rule of thumb guide we suggest consideration of the following from *Sullivan v. State of Arizona,* 47 Ariz. 224, 238, 55 P.2d 312 (1936):

"The best rule for determining whether remarks made by counsel in criminal cases are so objectionable as to cause a reversal of the case is, Do the remarks call to the attention of the jurors matters which they would not be justified in considering in determining their verdict, and were they, under the circumstances of the particular case, probably influenced by these remarks."

In *United States v. Spain,* 536 F.2d 170, 175-176 (7th Cir. 1976), it is said:

"Nothing we have said is intended to discourage a prosecutor from vigorous argument or frank comment on the evidence or the character of a witness. The line between the 'undignified and intemperate' . . . and the 'hard' . . . or 'harsh' . . . but fair, is not susceptible of ready definition. It can only be located through a sense of fitness and taste and an appreciation of the prosecutor's proper role . . . . Those who cannot discern that line with confidence had best stay a safe distance away from it."

To this we would add that effort through independent study should be devoted to acquisition of some acquaintanceship with the location of the line. To learn the lesson at the "school of hard knocks," that is, by reversal after a hard-earned conviction, is a high price to pay.

Attached as an appendix to this opinion are extracts from the prosecution's closing argument in this case. Following the first and introductory quotation are statements that directly or by implication constitute avoidable actual or possibly improper argument. We strongly caution that by this opinion these statements are not to be taken as demarcation of territory within which prosecutors at future criminal trials may feel free to step. They are provided so that counsel and the trial judge may be aware they were the subject of our concerned consideration.

Affirmed.

## APPENDIX

| | |
|---|---|
| Tr. pp. 4-5 | "The real issue in this case is the believability of the witnesses presented by the State and presented by the defendant; and which version of the facts you are going to believe." |
| Tr. pp. 6-7 | "Is it reasonable [for you to believe] that [the victim] wanted to leave home because she thought she was being worked too hard, or is it because we have a fourteen year old girl who thinks about leaving home because her stepfather sexually abuses her *and* that *because both of her parents drink excessively and her mother isn't the least bit interested in resolving the problems.* She says to herself, I do my assigned chores, but not only is there no appropriate gratitude for that, but I'm subjected to this type of abuse. Now how many of us in her position would not give some thought to escaping such a nightmare?" Emphasis added. |
| Tr. p. 8 | "*And the important part of the State's case against the defendant are the statements of the notorious Darlene Gilley* made in front of Detective Bayless, Detective Haflich, and Mary Rice. And I call her notorious—at one time, if only for |

a few days, the briefest of moments — that woman's better instincts caused her to protect her children. To take them from a drinking, lecherous, husband and cause her to say, if he is that way then I don't want them here and I don't want myself here. She felt strongly enough to ask Steve Bayless to get her out of the house. At that time she felt strongly enough to seek a divorce the next day and make a report to a Sheriff's Juvenile Detective. But then, Mrs. Gilley, another day later, went to work with her husband. And after that *she has made a different choice. My husband, whatever he might be, I'll defend, protect, and lie for him. Even to the detriment of the children.*

"MR. SHAWVER: Objection, your Honor. That — I don't ever remember hearing anything like that in the evidence.

"MR. O'SULLIVAN: Your Honor, that's a fair comment upon the evidence and what she did.

"THE COURT: Ladies and Gentlemen of the jury, the statements of counsel are not evidence. If you believe any statements made by counsel are not supported by the evidence, you must disregard the statement." Emphasis added.

Tr. p. 9  "In regards to count two, Ladies and Gentlemen, *the lewd touching occurred on several occasions,* and what we're talking about in two, count two, is the incident in the trailer house in late March or April of 1978." Emphasis added.

Tr. p. 11  "Counsel in his argument talks about three different versions of the events. *There is only one version of the events. If there is a different version, it's because a mother in this case chose to lie.*" Emphasis added.

Tr. p. 12  "Now we don't, we don't vouch for her credibility when she was testifying, just because we call her. *Unfortunately, we have to call her* and if she lies then we put on the people who can clear up what she said earlier." Emphasis added.

Tr. p. 12  "Her first instincts were what happened. *Since then she has other motives. She's turned on her children.*" Emphasis added.

Tr. pp. 12-13  "*If* and in the course of your consideration of her testimony *you have given some thought as to maybe* in fact *she should be charged with some offense* that *you can rest assured that the thought has not also escaped me* —

"MR. SHAWVER: Objection, your Honor.
"THE COURT: Sustained." Emphasis added.

Tr. p. 14  "Ladies and Gentlemen, those, *those children have suffered a great deal and more than one time, most recently being their mother turning on them.*" Emphasis added.

Tr. p. 14  "*The matter* have — *has been investigated as thoroughly as possible. I did my best in presenting the evidence. Now you are the last link in the chain of justice.* I ask you to return a verdict of guilty on both counts." Emphasis added.