No. 66,005

STATE OF KANSAS, *Appellee*, v. LAMACEY WOODS, *Appellant*.

(825 P.2d 514)

110

Opin-
ion filed January 17, 1992.

*Geary N. Gorup*, of Law Office of Geary N. Gorup, of Wichita, argued the cause and was on the brief for appellant.

*Debra Byrd Wagner*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Robert T. Stephan*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is a direct appeal by Lamacey Woods from his convictions of one count of sale of cocaine, one count of aggravated assault, two counts of aggravated battery, and two counts of aggravated kidnapping.

Woods' appeal centers on the trial court allowing the State to amend the complaint and on the contention his convictions for aggravated assault and aggravated battery are multiplicitous with his two convictions for aggravated kidnapping.

Woods originally was charged with six counts. Counts one and two (aggravated kidnapping and aggravated battery) occurred on September 7, 1989. The remaining four counts (aggravated kidnapping, aggravated battery, and two counts of aggravated assault) arose on September 11, 1989. Charles Green, who was 14 years of age in September 1989, was the alleged victim in all six counts.

A second complaint was filed alleging Woods sold cocaine on August 16, 1989.

Separate preliminary hearings were held on the two complaints, and Woods was bound over for trial on all counts of both complaints.

The State then filed an amended complaint, consolidating the two complaints containing the seven counts on which Woods had already been bound over for trial. The State added a new count to the amended complaint, charging Woods with a new charge of conspiracy to commit the crimes of sale of cocaine, possession of cocaine with the intent to sell, possession of cocaine, theft, aggravated kidnapping, aggravated battery, aggravated assault,

and terroristic threat. The conspiracy count is 6 pages long and has 21 separate "overt acts."

The State then filed a motion to permit the State to proceed on the amended complaint. That motion was granted the same day Woods was given a preliminary hearing on all counts of the amended complaint. Woods was bound over for trial on all eight counts. At trial, Woods was acquitted of conspiracy and one count of aggravated assault on September 11, 1989. This appeal followed.

### 1. Amended Complaint

Woods argues that allowing the complaint to be amended violated K.S.A. 22-3201(4). The statute provides that "[t]he court may permit a complaint or information to be amended at any time before verdict or finding if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced."

Woods argues that the trial court interpreted the statute to mean that a complaint may be amended, even by adding a new charge, providing the defendant's substantial rights are not prejudiced. Woods contends this is contrary to the plain language of the statute that permits an amendment only "if no additional or different crime is charged *and* if substantial rights of the defendant are not prejudiced."

Woods acknowledges there is case law supporting the trial court's interpretation of the statute. The defendant argues that to the extent *State v. Niblock*, 230 Kan. 156, 631 P.2d 661 (1981), and *State v. Osburn*, 216 Kan. 638, 533 P.2d 1229 (1975), contradict the express language of K.S.A. 22-3201(4), these cases should be overruled.

In *Niblock*, the defendant originally was charged with aggravated robbery, felony theft, and unlawful possession of a firearm. Without notice to the defendant, the complaint was amended 10 days after its filing to include one count of aggravated assault.

In response to the defendant's contention that the trial court erred in permitting the amendment, this court set forth the following guidelines:

"The inquiry under the statute is whether prejudice has occurred to the appellant. *State v. Smith*, 225 Kan. 796, 798, 594 P.2d 218 (1979). 'Prior to trial, the prosecution is given wide discretion in amending the information

as to form and substance.' *State v. Foy,* 227 Kan. 405, 408, 607 P.2d 481 (1980). The statute does not explicitly require that a hearing be held prior to the decision to amend a complaint. The absence of such a hearing is not error. It was not error to allow the prosecutor to add a different crime, and appellant fails to show that he was prejudiced, which he must do in order to obtain reversal on those grounds. See *State v. Johnson,* 223 Kan. 185, 573 P.2d 595 (1977); *State v. Gilley,* 5 Kan. App. 2d 321, 615 P.2d 827, *rev. denied* 228 Kan. 807 (1980); *State v. Wright,* 4 Kan. App. 2d 196, 603 P.2d 1034 (1979), *rev. denied* 227 Kan. 928 (1980)." 230 Kan. at 163.

Woods contends this "holding is contrary to the clear language of the statute and totally unsupported by the case law relied upon by the Supreme Court in *Niblock.*"

In *State v. Smith,* 225 Kan. 796, 594 P.2d 218 (1979), a case cited in *Niblock,* the issue was whether the amended complaint prejudiced the defendant. Woods argues that the *Smith* court did *not* suggest "the only inquiry under K.S.A. 22-3201(4) is prejudice if an additional or different crime is charged." The court's language does not support Woods' argument.

"The appellant argues he should have been afforded a new preliminary hearing on the amended information. He acknowledges the crime charged remained the same but contends he was confronted with an entirely different set of facts to defend.

"K.S.A. 1978 Supp. 22-3201 provides in pertinent part:

'(4) The court may permit a complaint or information to be amended at any time before verdict or finding if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced.'

As a general rule prior to the commencement of the trial the prosecutor should be given wide discretion in amending the original information. A trial court may allow an amendment to an information in its discretion both as to form and substance after arraignment and plea before commencement of the trial. *State v. Osburn,* 216 Kan. 638, 641, 533 P.2d 1229 (1975). The inquiry under the statute is whether or not the circumstances of each case reflect prejudice to the defendant. Where the record fails to establish prejudice to the defendant's substantial rights, amendment at any time before the verdict is proper. *State v. Howard,* 224 Kan. 208, 211, 579 P.2d 702 (1978); see also *State v. Johnson,* 223 Kan. 185, 190, 573 P.2d 595 (1977)." 225 Kan. at 798.

Woods also claims that the cases cited in *Smith* do not support the *Smith* court's interpretation of K.S.A. 22-3201(4). The premise of Woods' argument is that *State v. Osburn,* 216 Kan. 638, *State v. Howard,* 224 Kan. 208, 579 P.2d 702 (1978), and *State v. Johnson,* 223 Kan. 185, 573 P.2d 595 (1977), did not involve a

situation in which the amendment to the complaint was a new or different charge.

In *Osburn*, the defendant appealed his conviction for possession of heroin, alleging that the trial court erred in refusing "to instruct on the procuring agent defense." 216 Kan. at 638. This court remanded the case for a new trial. The State then filed an amended complaint. The State deleted the words "and sell" from the original complaint charging that the defendant did *"possess, have under his control and sell* a narcotic drug, to-wit: heroin." 216 Kan. at 639. The State also dismissed the conspiracy to sell cocaine charge. The trial court overruled the defendant's motion to quash the amended complaint. The defendant then was arraigned. A jury trial was waived, and the case was tried to the bench. The defendant was found guilty of possession of heroin. This court said:

> "The decisions of this court support the rule that prior to the commencement of the trial the prosecutor should be given a wide discretion in amending the original information. We have consistently held that a trial court may allow an amendment to an information in its discretion both as to form and substance after arraignment and plea before commencement of the trial. (*State v. Morris,* 131 Kan. 282, 291 Pac. 742 [1930]; *State v. Hobl,* 108 Kan. 261, 194 Pac. 921 [1921].) Our cases distinguish between amendment before trial and those which are made during the course of the trial. (*State v. Eye,* 161 Kan. 69, 166 P.2d 572 [1946].) In permitting the state to amend an information the courts have been careful to protect the rights of the defendant so that his defense will not be prejudiced by the amendment. Permission granted by a trial court to amend an information after a plea of not guilty and before the jury has been sworn to try the case does not constitute reversible error in the absence of any reasonable contention or any showing that the interests of the defendant were thereby prejudiced. (*State v. Eye,* supra.)" 216 Kan. at 641.

In *Howard*, the defendants argued that the amended complaint prejudiced their substantial rights. This court stated that "[t]he inquiry under the statute is whether or not the circumstances of each case reflect prejudice to the defendant. [If] the record fails to establish prejudice to the defendant's substantial rights, amendment any time before the verdict is proper." 224 Kan. at 211.

Woods places heavy emphasis on *Johnson*. In *Johnson*, this court accepted the State's argument that the amendment did not involve a new or different crime. This court noted that a new or different crime is not the only statutory consideration. K.S.A. 22-

3201(4) also considers whether the defendant's substantial rights have been prejudiced. 223 Kan. at 190. Woods implies that the *Johnson* court acknowledged the two-prong statutory test.

Additionally, Woods contends that the broad language in *State v. Foy*, 227 Kan. 405, 607 P.2d 481 (1980), another of the cases cited in *Niblock*, should be disregarded. The *Foy* court stated that "[p]rior to trial, the prosecution is given wide discretion in amending the information as to form and substance. *State v. Smith*, 225 Kan. 796, 798, 594 P.2d 218 (1979)." 227 Kan. at 408. Woods maintains that attention should be focused on the specific language in the case.

Woods claims that *State v. Wilson*, 240 Kan. 606, 731 P.2d 306 (1987), and *State v. Scherer*, 11 Kan. App. 2d 362, 721 P.2d 743 (1986), are similar to the case at hand and support his position. In *Wilson*, the State attempted orally to amend a defective complaint during trial. The complaint was defective because it failed to charge any degree of criminal homicide. On appeal, this court held that the State failed to amend the complaint properly. "Here, an amendment to charge an offense could not have been made without charging an 'additional or different crime.' An information which does not charge *any* offense cannot be amended over defense objection to first charge an offense *during trial*." 240 Kan. at 608. In *Scherer*, the Court of Appeals voided 285 separate offenses added by the State to the information. In so doing, the court emphasized the *if no additional or different crime is charged* language. 11 Kan. App. 2d at 369-70.

The complaints in both *Wilson* and *Scherer* were amended during trial. What Woods does not discuss and what is critical to a number of cases, including *Wilson* and *Scherer*, is that this court has "distinguish[ed] between amendments before trial and those which are made during the course of the trial." *Osburn*, 216 Kan. at 641. Furthermore, in *State v. Ferguson*, 221 Kan. 103, 105, 558 P.2d 1092 (1976), this court stated that K.S.A. 22-3201(4) governs "[a]mending an information *during the course of trial*." (Emphasis added.)

Although the statutory language has changed since the inception over a century ago of statutory authorization to amend a complaint, this court consistently has given the State considerable latitude in amending a complaint before trial. A liberal interpre-

tation does not contradict the express language of the statute: K.S.A. 22-3201(4) does not forbid a court from differentiating between allowing the State to amend complaints before trial and during trial.

The State points out that the prosecutor could have dismissed both pending cases and filed a new case, incorporating the charges in the dismissed cases along with any new charges. Then, a new preliminary hearing would have been conducted. The defendant could be bound over on any crimes, charged or not charged, for which there was probable cause to believe the defendant had committed. See *State v. Pioletti*, 246 Kan. 49, 785 P.2d 963 (1990).

We see no reason to depart from the principle that the State has discretion to amend a complaint before trial and that error will be found only if the defendant's substantial rights are prejudiced. The defendant's rights were protected here by a hearing on the motion to amend the complaint and a new preliminary hearing. We find no error.

### 2. Prejudice Argument

K.S.A. 22-3203 governs consolidating separate complaints for trial: "The court may order two or more complaints, informations or indictments against a single defendant to be tried together if the crimes could have been joined in a single complaint, information or indictment." K.S.A. 22-3202(1) establishes the guidelines for consolidating charges in the same complaint.

"Two or more crimes may be charged against a defendant in the same complaint, information or indictment in a separate count for each crime if the crimes charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

Woods argues that the alleged attacks upon Charles Green (*i.e.*, the aggravated kidnapping, aggravated assault, and aggravated battery charges) and the sale of cocaine charge could not be joined under the statute. Woods contends the charges are not of the same or similar character. He claims the charges are not based upon the same act or transaction. The sale of cocaine charge was alleged to have occurred on August 16, prior to the alleged attacks upon Green on September 7 and 11. Furthermore, there were

no allegations that Green was involved in any manner in the sale of cocaine charge. Woods also maintains that the charges were not based on two or more actions or transactions connected together or constituting parts of a common scheme or plan. Woods argues that the State manufactured a conspiracy charge to tie the separate crimes and events together and to inject prejudicial evidence. By adding the conspiracy charge, Woods claims that the State avoided showing that joinder of the attack and the sale of cocaine charges was proper under K.S.A. 22-3202 and -3203.

The trial court held a hearing to determine whether to allow the amended complaint. Although the court did not discuss under which prong of K.S.A. 22-3202 joinder of all charges was proper, the court found "there are factual relationships alleged in counts one [conspiracy] and two [sale of cocaine] to the original six counts [attacks upon Green] brought in the Complaint/Information." Based upon this and other factors, the State's motion to amend the complaint was granted.

The trial court also denied Woods' motions to dismiss the conspiracy charge or to sever the conspiracy and sale of cocaine charges from the other six counts. The court ruled "that the type of evidence which is contemplated for presentation to a jury trial is of an overlapping nature among the eight counts." The court also commented upon the chronological sequence of events.

"In this Court's understanding, the instance[s] all occurred within a reasonably brief period of time as alleged by the State, and this is a factor of some significance in the Court's decision about severance, not only is there overlapping in evidence, but the chronology and the sequence of events that form the basis for the crimes alleged to have been committed by the defendant is highly pertinent and relevant to this Court's decision."

In *State v. Wagner*, 248 Kan. 240, 807 P.2d 139 (1991), this court discussed the scope of review.

" 'Whether a defendant may be tried on two or more complaints, informations, or indictments in a single trial rests in the sound discretion of the trial court, within the guidelines established in statute and case law, and its holding will not be disturbed on appeal absent a clear showing of abuse of discretion. Even if the trial court's consolidation order is determined to be an abuse of discretion, the defendant has the burden of showing prejudice requiring reversal.' " 248 Kan. at 242 (quoting *State v. Walker*, 244 Kan. 275, Syl. ¶ 1, 768 P.2d 290 [1989]).

"Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only when no reasonable person would take the view adopted by the trial court. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." 248 Kan. at 242 (citing *State v. Martin*, 237 Kan. 285, Syl. ¶ 1, 699 P.2d 486 [1985]).

The amended complaint alleged that Woods agreed with Sedrick Scott, Derrick Franks, Xeron Gaddy, Reba Phillips, Felix Williams, and others to commit or assist to commit "sale of cocaine, possession of cocaine with the intent to sell, possession of cocaine, theft as defined in K.S.A. 21-3701(d), aggravated kidnapping, aggravated battery, aggravated assault, and terroristic threat."

The complaint stated that the following acts, among others, occurred:

1. On February 21, 1989, Gaddy possessed a stun gun and a .25 caliber Raven Arms at 2100 East 21st Street.

2. On April 6, 1989, Woods was stopped at the bus station. He possessed several guns, including an RG .38 Special and a Smith and Wesson .38 Special, and ammunition. Woods also had $2,312.00 in cash on him.

3. On April 10, 1989, in obtaining the release of his car, Woods gave 728 North Minnesota as his address.

4. On May 2, 1989, Woods was stopped. He had $1,931.24 cash on him.

5. On August 16, 1989, Woods sold cocaine from the curb of the 700 block of North Minnesota.

6. On August 29, 1989, Scott and Michael Williams possessed cocaine at the 700 block of North Minneapolis in a car registered to Woods.

7. On September 7, 1989, Woods gave Charles Green cocaine for Green to resell. On that same day, Woods, Scott, and others took or confined Green by force, threat, or deception at 734 North Minneapolis. Woods, Scott, and others beat Green, burned him with an iron, applied electrical current to his feet, and cut him with a razor. On September 7 to 8, Woods gave Green cocaine.

8. On September 11, 1989, Woods, Scott, Felix Williams, and others took Green by force, threat, or deception from 9th and Washington to 734 North Minneapolis. They threatened Green with a .25 caliber semi-automatic pistol. They beat Green, burned him with an iron, applied electrical current to his feet, and cut him with a knife. Woods threatened Green with a .38 caliber revolver. Woods, Scott, Phil (LNU), and others possessed, among other things, one Ruger .22 caliber semi-automatic pistol, one Jennings .22 caliber semi-automatic pistol, one Smith and Wesson .38 special, two razor blades, and three irons.

The trial court did not abuse its discretion in finding that all eight counts were related factually. A reasonable person could find that these acts or transactions were in furtherance of a common scheme or plan to sell drugs and to "discipline" new recruits. Having so held, most of Woods' arguments that joinder was prejudicial become moot. The defendant's own testimony at trial furnished considerable support that a number of people were involved in a conspiracy to commit the crimes alleged.

We are troubled in this appeal, as in others, about whether the defendant has raised an issue. Here, the defendant's brief includes an 11-line sentence that contains four clauses. The tenor of the sentence is that the amendment violates the language of K.S.A. 22-3201. One clause states this violation "permitted the state to a *de facto* joinder of charges and thereby shifted the burden to the defense to obtain severance of charges which had not yet been consolidated." The defendant also mentioned this argument at oral argument. We find one other mention of this in the brief, but no attempt to brief it as an issue. If the defendant intended to raise this as an issue, he has failed to do so properly. In any event, the issue has no merit. The State's motion to file the amended complaint was granted April 12, 1989, and the State had the burden on that motion. The defendant did not file a motion to sever until after that date. Obviously, the State should have filed its motion before it filed its amended complaint. Whether to permit the State to argue its motion under the facts was discretionary and resulted in no prejudice to the defendant because the State could have dismissed all the charges and refiled them. This would have put the defendant in the same position of which he erroneously complains.

### 3. Multiplicitous Allegations

Woods argues his conviction for aggravated assault and two counts of aggravated battery should be set aside on the grounds of multiplicity. The defendant claims the aggravated assault and aggravated battery charges are multiplicitous with the two counts of aggravated kidnapping.

"Multiplicity exists when the State uses 'a single wrongful act as the basis for multiple charges.' [Citation omitted.] Charges are not multiplicitous if each charge requires proof of a fact not required in proving the other. [Citation omitted.] . . . Offenses are also not multiplicitous when they occur at different times and different places, because they cannot then be said to arise out of a single wrongful act." *State v. Howard*, 243 Kan. 699, 703, 763 P.2d 607 (1988).

See *State v. Zamora*, 247 Kan. 684, 694, 803 P.2d 568 (1990) ("Where offenses are committed separately and severally at different times and at difference places, they cannot be said to arise out of a single wrongful act."); *State v. Garnes*, 229 Kan. 368, 373, 624 P.2d 448 (1981) (same); *Wagner v. Edmondson*, 178 Kan. 554, 556, 290 P.2d 98 (1955) ("[T]he test for determining whether a continuous transaction results in the commission of but a single offense . . . is determined by whether separate and distinct prohibited acts, made punishable by law, have been committed."); see also *Davis v. State*, 210 Kan. 709, 713, 504 P.2d 617 (1972) ("[A] single motive for a series of acts does not necessarily result in a single crime.").

Multiplicity in the crimes charged exists if the crimes charged are based on "a series of violent acts occur[ring] simultaneously." *State v. Cathey*, 241 Kan. 715, 720, 741 P.2d 738 (1987); see *State v. Smith*, 245 Kan. 381, 392, 781 P.2d 666 (1989). This court has found offenses multiplicitous if the "defendant's conduct constituted a single continuous transaction" or "one continuing unbroken act of force." *State v. Bishop*, 240 Kan. 647, 653-54, 732 P.2d 765 (1987).

"We held a charge of aggravated assault to be multiplicitous with kidnapping in *State v. Racey*, 225 Kan. 404, 408, 590 P.2d 1064 (1979), and rape in *State v. Lassley*, 218 Kan. 758, 761-62, 545 P.2d 383 (1976). In both cases, however, the court found a single, continuous act. In *Lassley*, the victim was accosted in the living room of a home where she was babysitting. Lassley ordered her outside, grabbed her by the hair, pushed her down an alley, held a knife to her throat, took her to some nearby shrubs

and raped her. We held that the defendant's conduct constituted a single continuous transaction, a situation where there was a continuous act of force on the part of the defendant. We distinguished that case from *State v. James*, 216 Kan. 235, 531 P.2d 70 (1975), where there was a break in the action—an assault at one place and a subsequent rape at another. The facts in *Racey* are somewhat similar to those in *Lassley*. Racey continually threatened the victim with a gun throughout the entire sequence of events. There was one continuing unbroken act of force. Thus, we concluded that Racey could not be convicted of both aggravated assault and kidnapping." 240 Kan. at 653-54.

Multiplicity does *not* exist if an act of violence is intermittent or separate and wholly unrelated to the other acts of violence. *State v. Bourne*, 233 Kan. 166, 168, 660 P.2d 565 (1983). If there is a "break in the action" or if "offenses occurred at separate times and in separate places," the charges are not multiplicitous. *Bishop*, 240 Kan. at 653-54; see *State v. James*, 216 Kan. 235, 531 P.2d 70 (1975).

The *Bishop* court distinguished its facts from *Racey* and *Lassley*. The court stated:

"Here, as in *James*, there was a significant break in the action. The aggravated assault was completed when the defendant and Brice entered the bedroom, pointed shotguns at the victims, and threatened to blow their heads off if they didn't do as they were told. The victims were then bound with tape. Ms. D was taken, bound and by force, into the bathroom. One at a time, Brice and Bishop would come into the bathroom and fondle her. Still later, she was raped by Bishop, her resistance overcome by force or fear. The offenses of aggravated assault, taking and confining, and the subsequent rape were separate and distinct. The offenses occurred at separate times and in separate places. They were not a part of a single, continuous act, as in *Lassley* or *Racey*. There was no use or threatened use of the guns during the kidnapping or the rape. Since the offenses were not part of a single continuous act, we hold that the aggravated assault is not multiplicitous with the kidnapping or the rape." 240 Kan. at 654.

Here, Woods was convicted of two separate offenses, aggravated kidnapping and aggravated battery, that arose out of events occurring on September 7, 1989. The State argues that based upon the facts of this case, these two crimes are not multiplicitous because they occurred at separate times and in separate places.

Green, who was 14 years of age, testified that the following events occurred on September 7, 1989. Upon Woods' instructions, Green went into a back room. He stated that he had "no other choice" but to obey Woods even though "[a]t that time

[he] knew that they were fixing to try to beat [him] up." Green felt he had no way to resist. Additionally, Sedrick Scott and Phil were right behind him, and all were older and much larger. Scott and Phil started beating him. Woods, Scott, and Phil told Green several times that they were going to kill him. Woods left the room and then came back with a sawed-off shotgun. Woods repeatedly loaded and unloaded the gun in front of Green. Then, Woods told Scott to tie up Green's hands. Green again was beaten and kicked. Woods then burned Green on his back with an iron. A jury could find that these events proved the crime of aggravated kidnapping.

Woods made Green crawl to the bathroom where Woods attempted to electrocute Green. When this failed, Green was taken back into the back room. Woods then stuck pieces of hangers into the sockets of an extension cord. The cord was plugged into the wall outlet. Woods used the devise to shock the bottoms of Green's wet feet. Green also was cut on the arm with a razor blade. Salt then was poured into the cut and on the burns on his back. A jury could find that these events satisfied the elements for aggravated battery.

We conclude that the attempted electrocution was a "break in the action." Although no specific time span is given, the violence to Green was perpetrated in different rooms at different times. Additionally, the events that occurred after Green was burned with the iron were not needed to prove the crime of aggravated kidnapping.

Woods also claims that his convictions of aggravated kidnapping, aggravated battery, and aggravated assault, arising out of events that occurred on September 11, 1989, are multiplicitous.

Green testified that the following events occurred on September 11, 1989. Green was at the Glitter Dome with friends. Scott came up to Green and put a gun in Green's side. Scott told Green that Woods wanted to see him. Woods was waiting for Green outside. Scott, Phil, and another man were in the car. Woods drove Green to the house on North Minneapolis. While walking up to the house, Phil started hitting Green with a steel pole per Woods' instructions. A jury could find that these events proved the crime of aggravated kidnapping.

The aggravated assault conviction is based upon Woods' actions with a .38 revolver. After the defendant entered the house, he immediately put one round in a .38 caliber handgun and spun the cylinder. He then cleared the gun and held it to Green's head. Woods would ask a question and then pull the trigger. This was done four times. Woods then aimed the gun at the floor, pulled the trigger, and the gun discharged. An aggravated assault was complete at that time.

Green's hands were tied, he was placed on the floor and, over a period of time, was beaten with fists and the butt of a shotgun. He was burned on his stomach and chest three times with an iron and stabbed with a knife. Following that, he was shocked repeatedly with an extension cord device. Although all of these events took place in the same room, they were not a part of a common scheme such as carrying out a sexual assault, a robbery, or an attempted murder. The defendant in this case clearly intended to commit the separate crime of aggravated assault and then to batter Green with various instruments unrelated to the handgun used in the aggravated assault. Under the facts of this case, the charges are not multiplicitous.

Affirmed.