NOT DESIGNATED FOR PUBLICATION

No. 114,720

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

NICHOLAS L. COLLINS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; BILL L. KLAPPER, judge. Opinion filed March 3, 2017. Affirmed in part, reversed in part, and remanded with directions.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Jennifer S. Tatum*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., PIERRON and MALONE, JJ.

*Per Curiam*: A jury convicted Nicholas L. Collins of attempted aggravated robbery and aggravated battery. Collins appeals his convictions arguing: (1) The State's oral motion to amend the complaint to add a charge of aggravated battery at trial prejudiced his rights; (2) the district court did not have subject matter jurisdiction over the aggravated battery charge due to a defective complaint; and (3) the State did not provide sufficient evidence to support his attempted aggravated robbery charge.

On February 24, 2014, Collins, Joshua Hare, and Miranda Bakarich went to

1

Justin Daniels' house sometime around 9 or 10 p.m. Michael Thompson and Sherry McAnany were at Daniels' house when the three arrived. McAnany is the mother of Collins' child. Bakarich did not get along with McAnany, so they did not stay long. This was the first time Bakarich had ever met Thompson.

Thompson told McAnany that someone had stolen his car. McAnany said she had received a text message with an address for the location of Thompson's stolen car. Thompson asked Collins and Hare for a ride to go get his stolen car, and Collins agreed. Bakarich left with Collins, Hare, and Thompson. She "had a bad feeling," however, and took a piece of mail from Daniels' home because she did not know where she was.

Collins, Hare, Bakarich, and Thompson left together in a black four-door truck. Collins was driving. Hare was in the front passenger seat. Thompson was in the rear driver's side seat, and Bakarich was in the rear passenger's side seat. The address McAnany had given Thompson turned out to be an empty lot and Thompson's car was not there. They then drove to Bakarich's apartment.

On the way to Bakarich's apartment, Thompson saw what he believed to be his stolen car drive by. He also thought he saw McAnany as a passenger in the car. Thompson believed he was being set up and confronted Collins. Collins began screaming and demanded several times that Thompson empty his pockets and give all his money to Collins. McAnany had led Collins to believe that Thompson had just gotten his tax return and had $5,000 or $6,000 in cash. Thompson said he did not have any money and reached into his pockets to show Collins. Collins then told Hare to shoot Thompson.

Hare pulled out a gun and pointed it at Thompson. Bakarich pleaded with Hare not to shoot. Bakarich told Thompson to jump out of the truck, and she jumped also. As they were about to jump out of the truck, Hare fired a shot. As soon as Bakarich jumped, she heard another shot. After jumping, she heard a dragging sound that she described as

2

similar to the sound of a traffic cone being dragged under a car. She ran to a friend's house, and on the way, she continued to hear the dragging for at least 5 minutes. The sound then stopped, the truck door opened and shut, and the truck continued on without the dragging sound. When she reached her friend's house, she called the police.

When police and paramedics arrived on the scene around 11:30 p.m., they found Thompson lying face down in the middle of the street. The street was in a residential area and had little traffic that night. Thompson was unresponsive and appeared to have multiple injuries. Paramedics transported him to the University of Kansas Medical Center. Thompson had suffered severe blunt force trauma to his head. He also had a fractured right arm and some facial fractures. The treating physician did not observe any gunshot wounds. Police found $2,501.40 in Thomspon's wallet at the hospital.

After being released from the hospital, Thompson went to live with his mother who had to take care of him. He had a feeding tube and could barely see. Thompson had no memory of the incident.

On February 25, 2014, the police searched an apartment looking for Hare. They found a gym bag containing a sweatshirt, a toothbrush, and a Smith and Wesson .22 caliber handgun. DNA on the sweatshirt and toothbrush matched Hare's DNA. A DNA sample from the handgun was insufficient for comparison.

Police found the black truck on February 26, 2014, in a secluded, wooded area. The truck was covered in mud and all four wheels were missing. From inside the truck, they recovered a Gatorade bottle bearing Collins' DNA and a cigarette butt bearing Hare's DNA. There was a single bullet hole in the truck's rear window. Police were unable to recover identifiable fingerprints from the truck, and they did not find any blood on the truck's undercarriage.

On February 28, 2014, the State charged Collins with attempted aggravated robbery. On July 14, 2014, the district court held a preliminary hearing. Thompson's mother and Bakarich testified at the hearing. At the close of the State's evidence, the State moved to amend the information to add a charge of attempted second-degree murder, and the court granted the motion. Collins pled not guilty to both charges. On August 12, 2014, the State filed its first amended information, charging Collins with attempted second-degree murder and attempted aggravated robbery.

On March 2, 2015, the case proceeded to trial. The district court conducted voir dire, impaneled a jury, and excused the jury for the evening. The State then moved to amend the information to add a count of aggravated battery. The State noted it was not "trying to be tricky or shady" and the Court of Appeals sometimes did not understand that based on the record. The prosecutor stated, "I was thinking about it this week and how to approach it and I realize if he's injured from this car, that could constitute a second count of aggravated battery-reckless." Defense counsel objected, arguing the appropriate time to amend the complaint would have been at the preliminary hearing. The district court took the matter under advisement overnight. The next morning, the court granted the motion to amend the information. Defense counsel again objected, stating the amendment was "undue surprise and unfair surprise to the defense at this point . . . ."

On March 5, 2015, the jury acquitted Collins of attempted second-degree murder, but found him guilty of one count of attempted aggravated robbery and one count of aggravated battery. The State filed a second amended complaint including the aggravated battery charge on March 5, 2015, at 3:37 p.m. The exact time the jury returned its verdict is not clear from the record, but the State does not contest that it filed the second amended complaint after the jury had reached a verdict.

Collins filed a motion for a new trial and a motion to arrest judgment on March 24, 2015. In his motion for a new trial, he argued his substantial rights had been

4

prejudiced by the addition of the new charge of aggravated battery after trial had begun. He contended the additional charge denied him the opportunity to prepare a proper defense, including the possibility of calling an expert witness to challenge the State's medical testimony regarding the nature and cause of Thompson's injuries. In his motion to arrest judgment, he argued the district court lacked jurisdiction to convict him of aggravated battery because the State did not file an amended complaint until after the jury returned a verdict.

In ruling on the motions, the district court found "it would have been better for the amendment to have been requested sooner than it was." Additionally, the court found "it would have been better for the amendment to have been made in writing prior to the time before trial started." The court found, however, that neither of these matters were fatal to the amendment. The oral amendment was clear about what charge the State wished to add. Furthermore, the amendment did not prejudice Collins because it was based on facts known to him "since the inception of the matter," and known by defense counsel since his involvement in the case. The court sentenced Collins to 162 months in prison. Collins appeals.

Collins argues the district court erred in allowing the State to amend the complaint during trial. He contends the amendment charged a different crime, in violation of K.S.A. 22-3201(e). He also asserts the amendment prejudiced him, and he was unable to prepare a defense to the new charge. The State concedes the amendment added a different charge, but argues that Collins was not prejudiced by the amendment because he was aware of all the facts of the case prior to trial and he was able to present a defense to the new charge.

Under K.S.A. 22-3201(e), the district court may permit the State to amend the complaint or information "at any time before verdict or finding if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced." Whether to allow an amendment to an information is subject to the court's discretion.

5

*State v. Bischoff*, 281 Kan. 195, 205, 131 P.3d 531 (2006). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the district court; (2) the action is based on an error of law; or (3) the action is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

K.S.A. 22-3201(e) sets forth a two-pronged requirement for permitting the State to amend a complaint. First, the amendment will be permitted if no additional or different crime is charged. Second, if no additional or different crime is charged, the amendment will be permitted if the substantial rights of the defendant are not prejudiced. The State failed to meet either requirement in this case.

In interpreting K.S.A. 22-3201(e), Kansas courts have distinguished between amendments made before trial and those made during trial. *State v. Woods*, 250 Kan. 109, 114, 825 P.2d 514 (1992). Before trial, Kansas courts give considerable latitude to the State in amending the complaint. The State may even amend the complaint to charge a different crime prior to trial as long as doing so does not prejudice the substantial rights of the defendant. *Bischoff*, 281 Kan. at 205. However, the defendant is entitled to receive a preliminary hearing on any new felony charged by the State. See K.S.A. 2015 Supp. 22-2902(1) (every person charged with a felony shall have a right to a preliminary examination before a magistrate).

In other cases, however, Kansas courts have rejected amendments made during trial which charge an additional or different crime. See *State v. Wilson*, 240 Kan. 606, 608, 731 P.2d 306 (1987), *overruled on other grounds by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016); *State v. Scherer*, 11 Kan. App. 2d 362, 369-70, 721 P.2d 743 (1986). In both *Wilson* and *Scherer*, the court rejected amended charges filed by the State during trial under the plain language of the statute governing amended complaints without addressing whether the amendment prejudiced the defendant. See also *State v. Armstead*, No. 108,533, 2014 WL 349561, at *5 (Kan. App. 2014) (unpublished opinion)

6

(finding amendment to add difference charge during trial ineffective based on plain language of K.S.A. 22-3201[e]), *rev. denied* 304 Kan. 1018 (2016); *State v. Wentz*, No. 97,080, 2007 WL 1413136, at *6 (Kan. App. 2007) (unpublished opinion) (finding amendment charging different crime during trial ineffective even though it did not prejudice the defendant).

Based on these cases applying the plain language of K.S.A. 22-3201(e), a district court errs if it allows the State to amend a complaint to add a different charge during trial regardless of whether the amendment prejudices the defendant. Here, the State moved to amend the complaint to add a different charge of aggravated battery against Collins after the jury was impaneled. Because the State attempted to charge Collins with an additional crime during trial, the district court erred in permitting the amended complaint regardless of whether Collins had been able to show that he was prejudiced by the amendment.

Moreover, Collins was also able to show that he was prejudiced by the State's amendment. When the State added the charge of aggravated battery, Collins was required to present a different defense than if he had been charged only with aggravated robbery. As Collins points out, had he known about the amended charge prior to trial, he would have prepared differently for trial, including "investigat[ing] the possibility of calling a medical expert to challenge the State's expert witness regarding the nature and cause of the victim's injuries." The fact that the amendment prejudiced Collins' substantial rights constitutes an additional reason why the district court erred in allowing the amended complaint.

Collins also argues there was insufficient evidence to support his conviction for attempted aggravated robbery. He contends the State had to prove that he intentionally failed to complete the offense of aggravated robbery based on the elements of the crime of attempted aggravated robbery and the jury instructions. Because there was no evidence Collins intended to fail, he further argues the evidence is insufficient to uphold his

7

conviction. The State argues there is no mental culpability requirement for the failure to complete the object offense in attempted crimes, thus, the State did not need to prove Collins intended to fail to commit aggravated robbery. We agree with the State.

When the sufficiency of evidence is challenged in a criminal case, the appellate court reviews all the evidence in the light most favorable to the State. A conviction will be upheld if the court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt based on that evidence. *State v. Laborde*, 303 Kan. 1, 6, 360 P.3d 1080 (2015). In determining whether there is sufficient evidence to support a conviction, the appellate court generally will not reweigh the evidence or the credibility of witnesses. *State v. Daws*, 303 Kan. 785, 789, 368 P.3d 1074 (2016). To the extent this issue requires statutory interpretation, review is unlimited. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

Jury Instruction No. 7 stated the elements of attempted aggravated robbery as follows:

"1. The defendant performed an overt act toward the commission of aggravated robbery.
"2. The defendant did so with the intent to commit aggravated robbery.
"3. The defendant failed to complete commission of aggravated robbery.
"4. This act occurred on or about the 24th day of February, 2014, in Wyandotte County, Kansas."

Jury Instruction No. 10 instructed the jury, in pertinent part: "The State must prove that the defendant committed the crime of attempted aggravated robbery intentionally. A defendant acts intentionally when it is the defendant's desire or conscious objective to do the act complained about by the State."

Collins does not challenge the jury instructions. Rather, he argues that according to K.S.A 2016 Supp. 21-5202, there must be some mental culpability for every element

8

of attempted aggravated robbery. Therefore, he argues the State had to prove that Collins intentionally failed to complete the commission of aggravated robbery. Because the State did not present evidence that Collins intended to fail, he claims there is insufficient evidence to uphold his conviction.

K.S.A. 2016 Supp. 21-5202 covers mental culpability. It provides, in relevant part:

"(a) Except as otherwise provided, a culpable mental state is an essential element of every crime defined by this code. A culpable mental state may be established by proof that the conduct of the accused person was committed 'intentionally,' 'knowingly' or 'recklessly.'
. . . .
"(d) If the definition of a crime does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element.
"(e) If the definition of a crime does not prescribe a culpable mental state, but one is nevertheless required under subsection (d), 'intent,' 'knowledge' or 'recklessness' suffices to establish criminal responsibility.
"(f) If the definition of a crime prescribes a culpable mental state that is sufficient for the commission of a crime, without distinguishing among the material elements thereof, such provision shall apply to all the material elements of the crime, unless a contrary purpose plainly appears.
"(g) If the definition of a crime prescribes a culpable mental state with regard to a particular element or elements of that crime, the prescribed culpable mental state shall be required only as to specified element or elements, and a culpable mental state shall not be required as to any other element of the crime unless otherwise provided.
"(h) . . . All crimes defined in this code in which the mental culpability requirement is expressed as 'intentionally' or 'with intent' are specific intent crimes. A crime may provide that any other culpability requirement is a specific intent."

K.S.A. 2016 Supp. 21-5420 provides, in relevant part:

9

"(a) Robbery is knowingly taking property from the person or presence of another by force or by threat of bodily harm to any person.

"(b) Aggravated robbery is robbery, as defined in subsection (a), when committed by a person who:

(1) Is armed with a dangerous weapon."

K.S.A. 2016 Supp. 21-5301 defines an attempt as "any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime." An attempt has three elements: "(1) the intent to commit the crime, (2) an overt act toward the perpetration of the crime, and (3) a failure to consummate the crime." *Swenson v. State*, 284 Kan. 931, 942, 169 P.3d 298 (2007). Attempts are specific intent crimes requiring the actual intent to commit the object crime. *State v. Louis*, 305 Kan. 453, 463 384 P.3d 1 (2016).

The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *State v. Jordan*, 303 Kan. 1017, 1019, 370 P.3d 417 (2016). When construing statutes to determine legislative intent, appellate courts must consider various provisions of an act in pari materia with a view of reconciling and bringing the provisions into workable harmony if possible. *State v. Keel*, 302 Kan. 560, Syl. ¶ 7, 357 P.3d 251 (2015), *cert. denied* 136 S. Ct. 865 (2016). The courts must construe statutes to avoid unreasonable or absurd results and presume the legislature does not intend to enact meaningless legislation. *State v. Frierson*, 298 Kan. 1005, 1013, 319 P.3d 515 (2014). A specific provision within a statute controls over a more general provision within the statute. *Vontress v. State*, 299 Kan. 607, 613, 325 P.3d 1114 (2014).

K.S.A. 2016 Supp. 21-5202(a) provides that a culpable mental state is an essential element of every crime. It does not mandate, however, that a culpable mental state is an essential element of every element of every crime. Attempted

10

aggravated robbery does prescribe a culpable mental state—performing an overt act with the intent to commit aggravated robbery. This culpable mental state only applies to one element—the intent to commit aggravated robbery. Collins correctly points out that K.S.A. 2016 Supp. 21-5202(f) does not apply in this case, and the culpable mental state required for intent to commit the crime does not apply to the other elements. Collins' argues "there must be some other culpable mental state to apply to the rest of the crime."

What Collins ignores, however, are the provisions of K.S.A. 2016 Supp. 21-5202(g). Under subsection (g), if a crime prescribes a culpable mental state for one element, "the prescribed culpable mental state shall be required only as to specified element or elements, and a culpable mental state shall not be required as to any other element of the crime unless otherwise provided." K.S.A. 2016 Supp. 21-5202(g). As the State notes, subsection (g) and subsection (f) can be read in harmony because subsection (f) only applies "unless a contrary purpose plainly appears." K.S.A. 2016 Supp. 21-5202(f). Moreover, these more specific provisions control over the more general provisions of K.S.A. 2016 Supp. 21-5202(a).

Jury Instruction No. 10 informed the jury that "the State must prove [Collins] committed the crime of attempted aggravated robbery intentionally." Collins argues this means every element of attempted aggravated robbery must be committed intentionally and the State must prove he intended to fail to commit aggravated robbery. Jury Instruction No. 7, however, sets forth the elements of attempted aggravated robbery. Those instructions clearly state that the defendant need only intend to commit aggravated robbery. Because the State did not need to prove Collins intended to fail to commit aggravated robbery, Collins's sufficiency of the evidence argument fails.

11

We affirm the attempted aggravated robbery conviction and that sentence. We reverse the aggravated battery conviction and remand to vacate the aggravated battery sentence.

Affirmed in part, reversed in part, and remanded with directions.