No. 51,109

THE STATE OF KANSAS, *Appellee,* v. ROGER D. FOY, *Appellant.*

(607 P.2d 481)

Opinion filed March 1, 1980.

*Jack W. Shultz,* of Dodge City, argued the cause and was on the brief for the appellant.

*Daniel L. Love,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal in a criminal action from a conviction of felony murder (K.S.A. 21-3401). This case was before this court on appeal in *State v. Foy,* 224 Kan. 558, 582 P.2d 281 (1978). On the first appeal, the case was reversed and remanded for a new trial. After remand, the case was transferred to Sedgwick County and tried to a jury.

The evidence presented at the second trial did not substantially differ from that offered in the first trial except the defendant, Roger D. Foy, did not take the stand as he did in the first trial. The evidence was undisputed that the defendant Foy killed his wife, Sharon Foy, with a shotgun at the home and in the presence of

Sharon's mother, Grace Kreulhous, in Dodge City. Sharon and Roger Foy had been married for approximately twelve years. During this time their marriage was characterized by frequent arguments, physical violence, and separations. Prior to January 1976, the two were divorced, but then resumed living together in the home of Sharon's mother. On January 1, 1976, Sharon went drinking with some friends, and ended up at a party in a trailer where she continued to drink. The defendant having searched for her, later entered the trailer and began slapping and kicking her around. The owner of the trailer ordered defendant to leave at gunpoint. The following day, Sharon filed a complaint against Roger Foy charging battery. At that time, defendant moved out of Grace Kreulhous' house and moved in with Sharon's half brother. Thereafter, Sharon and Roger continued to see each other during the separation. He tried to reconcile with her. There was testimony that Grace and defendant did not get along and that one of the major problems between Sharon and defendant was Sharon's divided loyalty. During one of these separations, defendant stated that he would kill Sharon. At other times he talked of killing Grace; he also talked of killing himself.

On January 20, 1976, Roger D. Foy was served with the papers charging him with the New Year's Day battery of Sharon. He called Grace's house numerous times on that day, trying to talk with Sharon. At times he talked to Sharon and then Grace; both told him that they would try to help him, if he quit drinking. In the early evening on January 20, 1976, Roger Foy approached Steve Smith in his truck at a drive-in in Dodge City. Defendant got into the truck and began to assemble a sawed-off shotgun. When he was asked what he was going to do with it, he stated that he was going to blow the old lady away or words to that effect. At the defendant's insistence, Smith drove him to Grace's house.

Grace Kreulhous testified that she was present when defendant entered her home. He yanked the door open and entered without her permission. Defendant asked Sharon to go talk with him in Sharon's car. Sharon replied, "Roger, you know you are not supposed to be in Mama's house. And if you don't leave, we are going to have to call the law." Grace testified that she got up from the chair in which she had been sitting to phone the police. As she was walking down the hall, she heard Sharon say, "Don't Roger," or "Please don't." She turned to see defendant pointing a gun at

Sharon. She did not actually see defendant pull the trigger but heard a "pop" and saw a "flash." The shotgun blast struck Sharon on the left side of the face, killing her. The defendant then shook the gun before throwing it down beside Sharon's body. The defendant mumbled something like, "You asked for it," then "You will be next," or "You and the kids will be next." The defendant then ran or walked quickly out the door.

After leaving Grace's house defendant went by the home of a lady friend, Lois, and asked her to drive him to Wichita. The two of them left in her car, drove to Wichita, and went to the home of Kenneth Cupp. The defendant then told Cupp what had happened, and the two decided defendant should go to a motel to get some rest. The defendant and Lois then went to a motel, where the defendant was arrested. The defendant was convicted of felony murder and has appealed to this court claiming a number of trial errors. Other facts necessary for determination of an issue will be provided in discussing that issue.

The defendant's first point on the appeal is that the trial court erred in permitting the State to amend its information to allege felony murder less than a week before the trial and in permitting the State to assert a felony-murder theory at the trial. Additional facts deemed important to this issue are as follows: The defendant was originally charged with premeditated murder. He was convicted September 30, 1976, of felony murder. This conviction was reversed and remanded July 21, 1978. Apparently defendant's counsel and the county attorney had had some discussion and the county attorney had indicated he did not intend to rely upon the theory of felony murder at the second trial. The county attorney apparently changed his mind. On September 25, 1978, he sent a letter to defense counsel of his intent to amend the information. On September 26, 1978, the State filed a motion to include in the information, as a second count, a charge of felony murder during an aggravated burglary (K.S.A. 21-3716), as an alternative count to the original charge of premeditated murder. The motion to amend was sustained, but the State was required to furnish a bill of particulars setting forth in detail the testimony to be relied upon to prove felony murder. The amendment was made on September 27, 1978. The bill of particulars was furnished the following day. Trial commenced on October 2, 1978, and the jury impaneling was completed on October 4, 1978. After

hearing the evidence, the jury was instructed on first-degree murder and felony murder in the alternative, and the verdict of felony murder was returned on October 10, 1978.

The defendant contends that defense preparation was prejudiced because of counsel's reliance on the statement of the county attorney that the State would not rely on felony murder. Defense counsel argues that, because of the late amendment, he did not have time to prepare a defense for the felony-murder charge. We find the defendant's contention on this point to be without merit. K.S.A. 1977 Supp. 22-3201(4) specifically authorizes a trial court to permit amendment of an information any time before a verdict so long as no different or additional crimes are charged, and the rights of the accused are not prejudiced. Prior to trial, the prosecution is given wide discretion in amending the information as to form and substance. *State v. Smith,* 225 Kan. 796, 798, 594 P.2d 218 (1979). We do not see how defendant here could have been prejudiced in any way in the preparation of his defense as a result of the amendment to the information. An amendment to the information was not actually necessary, for an information in the ordinary form charging that a killing was done with malice aforethought, deliberation, and premeditation is sufficient to sustain a conviction of murder in the first degree committed in the perpetration of a burglary. *State v. Foy,* 224 Kan. at 566. The evidence presented at the second trial was essentially the same as that presented in the first trial. The defendant did not ask for a continuance because of the amendment. Furthermore, the State was required to furnish to the defendant a bill of particulars fully setting forth the evidence the State intended to rely on to prove felony murder. Since the defendant has failed to demonstrate any prejudice because of the amendment of the information, the defendant's first point must fail.

The defendant next maintains that he was denied a fair trial because Judge Robert M. Baker, who presided in the case, should have recused himself in response to the defendant's affidavits and motions for change of judge, and that the assigned judge, Honorable Bert J. Vance, erred in finding the defendant's affidavits for change of judge to be legally insufficient and untimely filed in his order overruling defendant's motion for change of judge. As noted heretofore, the defendant Foy was convicted of felony murder on September 30, 1976. He appealed to the Supreme

Court. On June 26, 1978, while the defendant's first appeal was pending, Judge Baker appeared at a hearing before the Board of Commissioners of Ford County where there was a public discussion of the cost of prosecutions in criminal cases. The affidavit of defendant stated that Judge Baker, at this meeting, complained about the rights afforded indigent defendants, their cost to the judicial system, and their expectations for "getting sprung" by their court-appointed attorneys. Apparently Judge Baker also stated that the courts today are conducted for the convenience of the criminals, that all they have to do is to have one infinitesimal mistake to appeal, that rehabilitation is a bust, and that criminals expect to change attorneys like they change their shirts. On July 21, 1978, the defendant's conviction in the first trial was reversed and remanded to the district court. A written order was entered setting the case for a second trial. The defendant was returned to Ford County to await retrial on August 17, 1978. Shortly thereafter, defense counsel informed Judge Baker that an affidavit and a motion for a change of judge would be filed by the defendant. An affidavit and a motion for change of judge were not actually filed until September 14, 1978, forty-nine days after Judge Baker's order setting the date for defendant's new trial and twenty-seven days after the defendant was returned to Ford County jail. Judge Baker was the only resident district judge in the Sixteenth Judicial District. Since the associate district judge, Jay Don Reynolds, had been special prosecutor in the first trial, the Honorable Bert J. Vance, district judge of the Twenty-Fifth Judicial District was assigned to consider the affidavit and motion for change of judge. On September 20, 1978, a hearing was held on the motion by Judge Vance. At the conclusion of the hearing, Judge Vance ruled that the affidavit was not sufficient to disqualify Judge Baker. In doing so, he reasoned that a disqualification of Judge Baker for bias and prejudice would have to be on the basis of *personal bias or bias against the defendant* and that Judge Baker's general statement as to what the law ought to be or his criticism of certain principles of law did not constitute personal bias on the part of the judge. In so ruling Judge Vance stated as follows:

"That type of statements do not constitute personal bias on the part of the Judge. All judges, all lawyers and I suspect most people have opinions as to what the law should be, and many people disagree with some propositions of law that have been our law for many years, and I don't think that this affidavit shows the type of

personal bias that would disqualify a judge. It does not show that the judge won't give the man a fair trial, and from the statements made he could not logically and reasonably arrive at a conclusion the judge could not give him a fair trial, so I am going to hold as a matter of law the affidavit is insufficient."

In addition, Judge Vance found that the affidavit of prejudice has been filed out of time and was also insufficient for that reason.

Having failed to disqualify Judge Baker on the first affidavit, defense counsel on September 27, 1978, filed a second affidavit of prejudice against Judge Baker based upon a letter which Judge Baker had written to the county attorney on September 26, 1978, a copy of which was sent to defense counsel, suggesting that, if the State was intending to rely on a charge of felony murder at the forthcoming trial of the case, the State should amend the information to charge felony murder. In his affidavit, the defendant stated in substance that he believed personal bias and prejudice of Judge Baker prevented him from getting a fair trial because the letter constituted advocacy of the judge in favor of the State. Judge Vance was quickly called back to Dodge City to hear this affidavit and motion for disqualification. A hearing was held on September 29, 1978. Judge Vance considered the affidavit and denied the motion, concluding that the letter was simply a suggestion by the judge to make the trial run smoother and, to avoid a procedural problem, it is a proper function of a trial judge to notify counsel of the problem. On this appeal, the defendant maintains that Judge Baker was disqualified to sit as trial judge at the second trial as a matter of law and, therefore, defendant should be granted a new trial.

The Kansas statute providing for the disqualification of a trial judge was K.S.A. 20-311d which was interpreted by the court in *Hulme v. Woleslagel,* 208 Kan. 385, 493 P.2d 541 (1972). In *Hulme,* the issue was whether or not an affidavit charging bias and prejudice against a party's *counsel* furnished grounds for disqualification of a judge. Noting the split of authority on that issue, the court concluded that bias or prejudice toward a party's attorney may be a ground for disqualification under the statute. The prejudice asserted in the affidavit in this case concerned Judge Baker's general attitude toward the administration of the criminal law and certain rights afforded persons charged with crime. We interpret the affidavit to refer to views the judge had demonstrated toward the subject matter of criminal law and

procedure, including his expressed opinion on certain legal questions.

The rule generally followed throughout the United States is that the words "bias" and "prejudice," as used in connection with the disqualification of a judge, refer to the mental attitude or disposition of the judge toward a party to the litigation and not to any views that he might entertain regarding the *subject matter* involved. Bias and prejudice mean a hostile feeling or spirit of ill will against one of the litigants, or undue friendship or favoritism toward one. *State, ex rel., v. Sage Stores Co.,* 157 Kan. 622, 625, 143 P.2d 652 (1943). See also 46 Am. Jur. 2d, Judges §§ 167 and 168 and the many cases cited therein. K.S.A. 20-311d(*b*)(5) specifies that personal bias, prejudice, or interest is ground for disqualification. This requires antagonism and animosity toward the affiant or his counsel or favoritism towards the adverse party or his counsel. "Personal bias" is to be distinguished from "judicial bias," and does not include views based upon matters arising during the course of the litigation or upon general attitudes common to the public generally. Views relating to legal questions, even strongly-held views in favor of law enforcement, do not amount to personal bias. *United States v. Nehas,* 368 F. Supp. 435 (W.D. Pa. 1973); *Knapp v. Kinsey,* 232 F.2d 458, 466 (6th Cir. 1956); *Antonello v. Wunsch,* 500 F.2d 1260 (10th Cir. 1974).

This court has held that in a criminal action the mere belief on the part of the trial judge that the accused is guilty of the crime charged is not enough in itself to require a disqualification. The question is not whether the trial judge believes the accused guilty, but whether the trial judge can give him a fair trial. *State v. Hendrix,* 188 Kan. 558, 363 P.2d 522 (1961); *State v. Cole,* 136 Kan. 381, 15 P.2d 452 (1932). We agree with Judge Vance that the statements made by Judge Baker at the meeting of the Board of County Commissioners of Ford County on June 26, 1978, simply involved general statements of opinion as to what the law should be and some disagreement with certain existing legal procedures. We cannot say that these general statements constituted a statement of personal bias either against defendant Foy or his counsel in this case. Hence, we conclude that Judge Vance was correct in denying a change of judge on that affidavit.

As to the second affidavit filed on September 27, 1978, we also agree with Judge Vance that the statements in the affidavit were not sufficient to require a change of judge. We interpret Judge Baker's

letter as simply a suggestion to the county attorney that the information be amended to specifically charge felony murder in the event the State intended to rely upon that charge. A copy of the letter was sent to defense counsel. As noted under the first point, an amendment of the information was not legally required in order to prosecute defendant Foy on a theory of felony murder. The original charge of premeditated murder was sufficient in itself to support a conviction for felony murder. We, thus, conclude that Judge Vance did not err in overruling the defendant's motion for change of judge.

As to the defendant's contention that Judge Baker erred in failing to recuse himself in response to the defendant's affidavit and motion for change of judge, we, likewise, hold that such refusal does not constitute reversible error. It must be remembered that Judge Baker was the trial judge at the original trial of this case. No claim has been made, nor does the record indicate, there was prejudice in the manner in which Judge Baker presided at that trial. Judge Baker was the only resident district judge in the judicial district who could preside at the second trial, since associate district judge Jay Don Reynolds had been special prosecutor in the case at the first trial. Judge Baker certainly had gained a great deal of insight and knowledge about the case at the first trial and undoubtedly felt it was his judicial duty to proceed. Although he might well have recused himself, we cannot say that he committed error or abused his discretion in failing to do so.

The defendant next maintains that the actual conduct of Judge Baker at the trial reflected bias and prejudice toward defendant and, therefore, defendant was denied a fair trial. We have considered each of the complaints asserted by the defendant and find them to be without merit. We have very carefully gone over the trial record in the case and are convinced that, as far as the judge's demeanor is concerned, the defendant was afforded a fair trial. Defendant complains of a certain remark made to defense counsel in chambers, out of the hearing of the defendant and the jury. This has given this court some concern. The remark was intemperate, crude, and discourteous. This remark, however, was never brought to the attention of the jury and, in our judgment is completely out of character when compared with the demeanor and attitude of the judge demonstrated before the jury and at post-trial hearings. On all occasions, Judge Baker treated counsel,

the defendant, witnesses, and the jury with courtesy and consideration. We note, for example, that following the defendant's conviction, at defense counsel's request, Judge Baker requested a post-trial investigation on Mr. Foy and also requested counsel to submit a suggested program of rehabilitation for the defendant. Furthermore, the court was particularly considerate in granting defendant's counsel an additional fifteen days after submission of the trial transcript to file a motion for a new trial in the case. The usual statutory procedure requires that defendant file a motion for a new trial within ten days after the verdict of guilty (K.S.A. 22-3501).

The other incidents complained of by defense counsel in his brief do not, in our judgment, constitute either a demonstration of Judge Baker's bias and prejudice or constitute justification for reversal of the case. At one point, the judge suggested to the assistant county attorney that he rephrase a question in a certain manner. This suggestion to an attorney, only recently admitted to the bar and inexperienced in trial advocacy, does not carry the sinister implication suggested by defense counsel. Likewise, the questions directed by the court to defendant, asking him if his counsel's waiver of opening statement and the resting of the defense's case was with defendant's permission, was consistent with the court's actions at other times during the trial. We cannot believe that such actions on the part of the trial judge could have affected the outcome of the trial so as to justify a reversal of the case.

The defendant next complains that the court erred in admitting the testimony of certain State witnesses over defendant's objection. Defendant objected to certain testimony given by Grace Kreulhous which was elicited by the prosecutor shortly after she took the stand. During preliminary questions by the State, she was asked if there had been any changes in her health since witnessing the death of her daughter on January 26, 1976. This question was objected to and overruled. It is obvious that court and counsel were concerned that Mrs. Kreulhous might break down during the trial. During both direct and cross-examination, inquiry was made by counsel if she was all right or if she needed to rest. We cannot say that it was prejudicial error for the court to permit the question to be asked of the witness. In view of the fact that her testimony was highly emotional and she wept many

times during her examination by counsel, it is unlikely that the question in regard to her health could have affected the outcome of the case.

Defendant complains of certain testimony given by KBI agent Hugh Kizer, a forensic expert for the KBI. He performed various tests on the shotgun which killed Sharon Foy. The State questioned the witness as to the normal firing position of a person's hand on the shotgun and whether an injury to defendant's hand could have been caused by the kick of the gun on discharge, if the gun had been intentionally discharged. Defendant objected to this line of questioning as being within the common experience of laymen, and therefore, was not a proper subject for expert opinion. In our judgment, the witness's special knowledge about the operation of the weapon's firing mechanism and the effect of recoil would be helpful to the understanding of the jury. We find no error in the admission of this testimony. Finally, the defendant contends that it was error to admit the testimony of Lois, defendant's lady friend, involving the defendant's attempt to have sexual relations with her on the night of the shooting and during their drive in the automobile to Wichita. This was offered by the State to show the defendant's demeanor and conduct after the shooting and his state of mind. We believe that this evidence was relevant on the issue of defendant's state of mind and that it was not error to admit it.

The defendant next complains of certain errors in the instructions given by the court. We have examined the instructions and find that they are fair statements of the law. The instruction defining felony murder was submitted to defense counsel prior to the court's instructing the jury, and he stated that he had no objection to it. We cannot say that the instruction was manifestly erroneous. Likewise, the other instructions do not justify reversal of the case.

The defendant's last two points are that the trial court erred in overruling defendant's motion to dismiss and for a directed verdict of acquittal at the close of the State's case-in-chief, and that the trial court erred in overruling the defendant's motion for a new trial. We find these points, likewise, to be without merit. The record shows clearly that counsel for both the State and the defendant demonstrated high professional competency in representing their clients at the trial. The evidence in the case was

practically undisputed that the defendant, having obtained a shotgun and expressing his intention to kill his wife, went to his mother-in-law's home, entered the home without her consent, and shot his wife. Frankly, it is difficult to see how the jury could have reached a different result than was reached at the second trial in this case. We find no basis for holding that the evidence was insufficient to sustain guilt or that there is any reason to grant a new trial in this case.

The judgment of the district court is affirmed.