## MALCOLM ROBERTSON *v.* TOWN OF STONINGTON
### (SC 16219)

McDonald, C. J., and Borden, Norcott, Palmer and Sullivan, Js.

Argued January 18—officially released May 16, 2000

*Thomas J. Londregan,* with whom, on the brief, was *Jeffrey T. Londregan,* for the appellant (defendant).

*Jeremiah Donovan,* for the appellee (plaintiff).

*Opinion*

NORCOTT, J. The defendant, the town of Stonington, appeals from the judgment of the trial court reducing the tax assessments levied by its board of tax review upon the real property of the plaintiff, Malcolm Robertson.[1] The dispositive issue in this appeal is whether a property owner is barred from bringing a property tax appeal under General Statutes § 12-117a[2]

[1] The defendant appealed to the Appellate Court and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

[2] General Statutes § 12-117a provides: "Any person, including any lessee of real property whose lease has been recorded as provided in section 47-19 and who is bound under the terms of his lease to pay real property taxes, claiming to be aggrieved by the action of the board of tax review or the board of assessment appeals, as the case may be, in any town or city may, within two months from the date of the mailing of notice of such action, make application, in the nature of an appeal therefrom, with respect to the assessment list for the assessment year commencing October 1, 1989, October 1, 1990, October 1, 1991, October 1, 1992, October 1, 1993, October 1, 1994, or October 1, 1995, and with respect to the assessment list for assessment years thereafter, to the superior court for the judicial district in which such town or city is situated, which shall be accompanied by a citation to such town or city to appear before said court. Such citation shall be signed by the same authority and such appeal shall be returnable at the same time and served and returned in the same manner as is required in case of a summons in a civil action. The authority issuing the citation shall take from the applicant a bond or recognizance to such town or city, with surety, to prosecute the application to effect and to comply with and conform to the orders and decrees of the court in the premises. Any such application shall be a preferred case, to be heard, unless good cause appears to the contrary, at the first session, by the court or by a committee appointed by the court. The pendency of such application shall not suspend an action by such town or city to collect not more than seventy-five per cent of the tax so assessed or not more than ninety per cent of such tax with respect to any real property for which the assessed value is five hundred thousand dollars or more, and upon which such appeal is taken. If, during the pendency of such appeal, a new assessment year begins, the applicant may amend his application as to any matter therein, including an appeal for such new year, which is affected by the inception of such new year and such applicant

if the property owner has entered into an agreement in violation of the public policy of this state as expressed in General Statutes § 51-86.[3] We conclude that there is no such bar. We therefore affirm the judgment of the trial court.

The plaintiff is the owner of a property known as Seaport Marina located on the Mystic River near the center of the town of Mystic. Seaport Marina is a boat-yard containing 11.2 acres of land. In 1994, the defendant commissioned the Cole-Layer-Trumbull Company (Cole-Layer) to conduct a revaluation of all real property within its jurisdiction. Cole-Layer established a fair

need not appear before the board of tax review or board of assessment appeals, as the case may be, to make such amendment effective. The court shall have power to grant such relief as to justice and equity appertains, upon such terms and in such manner and form as appear equitable, and, if the application appears to have been made without probable cause, may tax double or triple costs, as the case appears to demand; and, upon all such applications, costs may be taxed at the discretion of the court. If the assessment made by the board of tax review or board of assessment appeals, as the case may be, is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes, together with interest and any costs awarded by the court, or, at the applicant's option, shall be granted a tax credit for such overpayment, interest and any costs awarded by the court. Upon motion, said court shall, in event of such overpayment, enter judgment in favor of such applicant and against such city or town for the whole amount of such overpayment, together with interest and any costs awarded by the court. The amount to which the assessment is so reduced shall be the assessed value of such property on the grand lists for succeeding years until the tax assessor finds that the value of the applicant's property has increased or decreased."

[3] General Statutes § 51-86 provides: "(a) A person who has not been admitted as an attorney in this state under the provisions of section 51-80 shall not solicit, advise, request or induce another person to cause an action for damages to be instituted, from which action or from which person the person soliciting, advising, requesting or inducing the action may, by agreement or otherwise, directly or indirectly, receive compensation from such other person or such person's attorney, or in which action the compensation of the attorney instituting or prosecuting the action, directly or indirectly, depends upon the amount of the recovery therein.

"(b) Any person who violates any provision of this section shall be fined not more than one hundred dollars or imprisoned not more than six months or both."

market value of $1,365,000 for the plaintiff's land and $1,092,200 for the plaintiff's building, for a total of $2,457,200.

Thomas Merola operates a business known as Valuation Services. He is not now, nor has he ever been, a party to the plaintiff's tax appeal. Merola solicits property owners to challenge the valuation of their properties by municipal assessors, and he uses brochures to advertise his services. Merola's claimed expertise is property appraisal, but he is not an attorney. Merola's service consists of representing property owners before the municipal board of assessment appeals. If unsuccessful, Merola hires an attorney to prosecute an appeal from the municipal board of tax review to the trial court. Merola pays all costs from the time he appears before the board of assessment appeals through the trial court proceedings. Merola's fee is contingent: he receives one-third of any tax savings over a three year period of overvaluation. Thus, taxpayers who hire Merola bear no economic risk. When Merola determines that a property has not been overassessed, he does not agree to represent the property owner. It is undisputed that this type of business has been practiced openly, for a long time, by many firms.

The plaintiff met Merola through a mutual friend who was familiar with Merola's business. Although the plaintiff had appealed from an assessment on his own in the past, he sought Merola's assistance following the 1994 assessment. Merola examined the property and told the plaintiff that he believed that it had been substantially overassessed. The plaintiff then hired Merola to challenge the assessment and, if necessary, to engage an attorney for the plaintiff to pursue the tax appeal to the trial court. Subsequently, the plaintiff asked the defendant to adjust its determination of the fair market value and the resulting assessment. As a result, the fair market value was adjusted to $1,228,500 for the

plaintiff's land and $912,343 for the plaintiff's building, for a total of $2,140,843. Thereafter, the plaintiff further appealed to the board of tax review. No additional change was made in the assessment. Merola then hired an attorney for the plaintiff to pursue this appeal to the trial court.

In the trial court, the plaintiff's expert appraiser, not Merola, testified that the fair market value of the plaintiff's property was $1,280,000 on October 1, 1994. The defendant's appraiser testified that the fair market value of the plaintiff's property was $1,870,000 on October 1, 1994. After giving selective credibility to the various expert computations and analyses, the trial court concluded that the fair market value was $1,676,448 on October 1, 1994.

As a special defense, the defendant had claimed that, because of the plaintiff's contingent fee arrangement with Merola, the plaintiff's action violated public policy as expressed in § 51-86, which prohibits the unauthorized practice of law, and, therefore, was barred.[4] The trial court disagreed, and concluded that the plaintiff's action was not barred because Merola was not a party to the action before the court and, therefore, any public policy violations that may have been committed by Merola were not relevant to the plaintiff's right to bring a tax appeal. This appeal followed.

On appeal, the defendant claims that in order to effectuate the public policy of § 51-86, this court must bar the plaintiff's cause of action under § 12-117a because the plaintiff is a party to an illegal contract for the prosecution of the cause of action. We disagree.

We begin our analysis with an examination of the relationship between the enforceability of a contract against public policy and the underlying cause of action.

---

[4] See footnote 3 of this opinion for the text of § 51-86.

"[I]t is unquestionably the general rule, upheld by the great weight of authority, that no court will lend its assistance in any way toward carrying out the terms of a contract, the inherent purpose of which is to violate the law. In case any action is brought in which it is necessary to prove the illegal contract in order to maintain the action, courts will not enforce it, nor will they enforce any alleged right directly springing from such contract . . . ." (Internal quotation marks omitted.) *Solomon* v. *Gilmore*, 248 Conn. 769, 785, 731 A.2d 280 (1999). The only contract that has ever been in question in the present case is that between the plaintiff and Merola. In challenging the validity of this contract, the defendant does not seek to extinguish the contractual obligations between the plaintiff and Merola, but, rather, to deny the plaintiff his statutory right to a property tax appeal. We conclude that the alleged validity of the contract is irrelevant to the plaintiff's right to appeal.

Furthermore, we conclude that the plaintiff's property tax appeal is not barred by the common law of champerty. "Ordinarily an agreement against public policy in the nature of maintenance or champerty is of no avail to a defendant. . . . The right, to enforce which the action is brought, does not originate in the illegal agreement nor is proof of that agreement necessary to its establishment and the agreement is therefore not so related to the action that the court will regard it." (Citations omitted.) *Rice* v. *Farrell*, 129 Conn. 362, 367, 28 A.2d 7 (1942); see also *Perry* v. *Puklin Co.*, 100 Conn. 104, 110, 123 A. 28 (1923) ("[c]hamperty is not a defense to the obligation sued upon, since it is the champertous contract and not the right of action, which is voidable at common law").

We also consider the public policy concerns that are implicated in the present case, namely: the public policy against the unauthorized practice of law, and the public

policy in favor of fair and accurate taxation.[5] There is no public policy that discourages bringing valid tax appeals, and there is no evidence that Merola promotes frivolous tax appeals. Indeed, the evidence indicates that Merola screens out what he believes to be accurately assessed properties and aids only those owners whose properties he believes have been overassessed. Thus, it reasonably may be maintained that Merola's business, although it is run for profit, promotes fair and accurate taxation by facilitating the correction of errors by municipal assessors. If this tax appeal were barred on account of Merola's activities, the defendant would be allowed to withhold from the plaintiff an otherwise valid tax refund and to collect from the plaintiff excessive taxes each year until the next revaluation. Accordingly, we reject the defendant's special defense in light of our overriding concern for the proper redress of unfair and inaccurate taxation.

The defendant argues that barring the plaintiff's tax appeal is necessary to deter the types of contractual arrangements that the plaintiff and Merola share. We disagree. Even if we were to assume, arguendo, that Merola's activities should be deterred, barring the plaintiff's tax appeal is an inappropriate means to that end. We conclude that Merola's conduct is not relevant to the plaintiff's tax appeal and, therefore, is not an appropriate bar to the plaintiff's action. Instead, a careful, thorough inquiry by a fact finder is required to determine—as a primary and not an ancillary issue—whether Merola's activities constitute the unauthorized practice of law. It would be inappropriate for us to make such a determination about Merola's actions because he is not a party to the action before this court, and is not in any position to defend himself against the defendant's

---

[5] See, e.g., General Statutes § 12-117a; see footnote 2 of this opinion; providing property owners with the right to appeal from tax assessments.

accusations. Although the judiciary certainly has a role[6] regarding the unauthorized practice of law, the concerns that the defendant raises about Merola's business practices are best addressed, if at all, by the statewide grievance committee, the arm of the judicial system that handles such matters. See, e.g., *Statewide Grievance Committee* v. *Harris*, 239 Conn. 256, 683 A.2d 1363 (1996); *Statewide Grievance Committee* v. *Patton*, 239 Conn. 251, 254, 683 A.2d 1359 (1996); *Grievance Committee* v. *Dacey*, 154 Conn. 129, 136, 222 A.2d 339 (1966), appeal dismissed, 386 U.S. 683, 87 S. Ct. 1325, 18 L. Ed. 2d 404 (1967); *State Bar Assn.* v. *Connecticut Bank & Trust Co.*, 145 Conn. 222, 232, 140 A.2d 863 (1958). "Attempts to define the practice of law have not been particularly successful. The reason for this is the broad field covered. The more practical approach is to consider each state of facts and determine whether it falls within the fair intendment of the term." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Patton*, supra, 254, quoting *Grievance Committee* v. *Payne*, 128 Conn. 325, 329, 22 A.2d 623 (1941). Before the statewide grievance committee, Merola would have the opportunity and the incentive to make his defense because the matter before the fact finder would be the issue regarding Merola's practice. In that venue, Merola's business practices would be the focal concern of the decision-making body.

The defendant also argues that the public policy against the unauthorized practice of law and the financing of lawsuits is so strong that the windfall it stands to gain at the plaintiff's expense if the tax appeal were barred is irrelevant. We disagree.

---

[6] General Statutes § 51-88 (c) provides: "Any person who violates any provision of this section [regarding the practice of law by persons not attorneys] shall be deemed in contempt of court, and the Superior Court shall have jurisdiction in equity *upon the petition of any member of the bar of this state in good standing or upon its own motion to restrain such violation.*" (Emphasis added.)

The defendant relies on *Barrett Builders* v. *Miller*, 215 Conn. 316, 576 A.2d 455 (1990), for the proposition that the enforcement of important public policies can outweigh inequities. In that case, we determined that a contractor could not recover from a homeowner on an unjust enrichment or quasi-contract theory for work done under a contract that violated the Home Improvement Act. Id., 322–23. The windfall in *Barrett Builders* resulted because, under the void contract, one party no longer had to fulfill obligations to the other party. We determined that the violation of the Home Improvement Act trumped the unjust enrichment of the homeowner. Id., 325. Also, in *Barrett Builders*, there was no perfectly equitable solution: either the homeowner had to pay for noncompliant work; or the contractor received no compensation for his efforts. Id., 327–28.

*Barrett Builders* is inapposite to the present case. Here, the defendant was not a party to the contract between the plaintiff and Merola. Whatever may have become of the plaintiff's contract with Merola, the defendant has not been discharged of the obligation to tax the plaintiff lawfully. Furthermore, in *Barrett Builders*, we were confronted with the conflict between the unjust enrichment of the homeowner versus the violation of the Home Improvement Act. Conversely, here, we are asked to balance unjust taxation, on the one hand, against an unresolved claim of the unauthorized practice of law, on the other. We already have concluded that the issue of the unauthorized practice of law is best addressed in another forum.

Having concluded that the plaintiff's tax appeal was not barred, we need not consider whether § 51-86 is applicable to the conduct that has been alleged.

The judgment is affirmed.

In this opinion the other justices concurred.