Nos. 109,577
109,578
109,579
109,770
109,771

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of Protest Appeals of
LYERLA, KATHY L. LIV. TRUST, *et al.*,
for Tax Year 2011 in Johnson County, Kansas.

SYLLABUS BY THE COURT

1.

Neither K.S.A. 2011 Supp. 74-2433f(e) nor K.S.A. 2011 Supp. 74-2437 give the Court of Tax Appeals the authority to adopt regulations that would set jurisdictional requirements for parties appearing before it.

2.

If a timely notice of appeal is filed with the Court of Tax Appeals, the failure to have the proper party sign that notice does not deprive the Court of Tax Appeals of jurisdiction over the appeal.

3.

Administrative agencies are created by statute, so they have only the powers granted by statute. The Court of Tax Appeals has no authority to determine the validity of contractual agreements between taxpayers and those hired by the taxpayers to represent them before the Court of Tax Appeals. Nor does the Court of Tax Appeals have authority to determine whether a party is engaging in the unauthorized practice of law or whether an attorney is violating attorney-ethics rules.

4.

Like any administrative agency exercising quasi-judicial authority, the Court of Tax Appeals may question its own authority or jurisdiction to hear a matter. Accordingly, the Court of Tax Appeals may take steps to determine whether the real party in interest is before it.

5.

On the facts of this case, where the judges of an administrative-law court have concluded that the representatives of a party lack credibility (one as a witness sworn under oath and the other as an attorney who must make truthful representations to a tribunal) and have conducted an inquisition on matters beyond the agency's jurisdiction to the detriment of the party, a reasonable person would lack confidence that the judges could provide a fair and impartial hearing. Accordingly, in this circumstance, the failure of these judges to recuse from further proceedings in the case would be unreasonable under K.S.A. 2013 Supp. 77-621(c)(8).

Appeal from Court of Tax Appeals. Opinion filed October 17, 2014. Reversed, vacated in part, and remanded with directions.

*R. Scott Beeler* and *Carrie E. Josserand*, of Lathrop & Gage LLP, of Overland Park, and *Linda Terrill*, of Property Tax Law Group, LLC, of Leawood, for appellant taxpayers.

*Kathryn D. Myers*, assistant county counselor, of Olathe, for appellee Board of Johnson County Commissioners.

Before POWELL, P.J., LEBEN and ARNOLD-BURGER, JJ.

LEBEN, J.: Five taxpayers who appealed tax valuations to the Court of Tax Appeals saw their appeals dismissed by that body because their appeal notices had been signed by non-attorneys. In addition, even though the Court of Tax Appeals ultimately

2

concluded that it had no jurisdiction to hear the appeals, it ruled in some of the cases that the contractual agreements between the taxpayers and those they hired to represent them before the Court of Tax Appeals (an attorney and a tax-appraisal firm) were void as against public policy.

The taxpayers have appealed to this court, arguing that the Court of Tax Appeals should neither have dismissed their appeals nor addressed the validity of their contractual arrangements with the attorney and tax-consulting firm. We agree. Any problem with the signature on the appeal notices would have been a correctable matter, not a jurisdictional hurdle that should have prevented the Court of Tax Appeals from considering the appeals. And the Court of Tax Appeals has no statutory authority to determine the validity of contractual arrangements between a taxpayer and a third party the taxpayer hires to represent it. We therefore reverse the decision of the Court of Tax Appeals and remand these appeals for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

Five separate tax appeals, all from Johnson County, have been consolidated into one appeal. In all five cases, the taxpayers appealed real-property valuations, and the Court of Tax Appeals dismissed the appeals for lack of subject-matter jurisdiction. All of the taxpayers are corporations, trusts, or some other form of artificial entity, *i.e.*, they are not individuals owning property in their own name. And the notices of appeal for all the taxpayers were filed by non-attorneys who had been hired to assist with the tax appeals but who were not otherwise employees or owners of the taxpayers.

Three of the taxpayers—the Kathy L. Lyerla Living Trust, MBS Barkley 1031, LLC, and ACDC Investments, LLC—filed their appeals in the small-claims division of the Court of Tax Appeals. The other taxpayers—Flik, Inc., and THF College Boulevard, L.L.C.—filed their appeals in the regular division of the Court of Tax Appeals.

3

Flik and THF College Boulevard hired tax consultants (Property Tax Services, Inc., and Hollrah and Fricke, Inc., respectively) to handle their tax appeals. Non-attorney employees of those companies signed and filed the notices of appeal.

The other taxpayers all hired J.W. Chatham & Associates, Inc., a tax-consulting firm, to handle their tax appeals, and a non-attorney employee of Chatham signed and filed the notices of appeal for those taxpayers. When the taxpayers didn't get any relief from their tax assessments from the small-claims division, they each pursued a further appeal to the regular division. Attorney Linda Terrill filed a notice of appeal in the regular division for each taxpayer.

That summarizes the relevant history for the appeals of Flik and THF College Boulevard. But quite a bit more took place in the appeals involving the Lyerla Living Trust, MBS Barkley 1031, and ACDC Investments.

In the appeal by the Lyerla Living Trust, Johnson County and Terrill reached an agreement to a reduced appraised value and submitted a proposed order reflecting that agreement. But the Court of Tax Appeals refused to consider the merits of any of these taxpayers' appeals or to accept the parties' agreement on the proper valuation for the property in the Lyerla case because it concluded that a non-attorney cannot sign the notice of appeal for a corporate or artificial entity. Based on that ruling, the Court of Tax Appeals concluded that none of the taxpayers had filed a timely appeal.

The process leading to that ruling began when the Court of Tax Appeals issued an initial order on August 23, 2012, asking that these taxpayers show cause why their cases should not be dismissed for lack of jurisdiction. The orders said that the Court of Tax Appeals sought to determine the identity of the real party in interest in each case and whether the Court could properly exercise subject matter jurisdiction. On August 31,

4

2012, the Court of Tax Appeals asked Terrill to provide the contracts between Chatham and the taxpayers. It then held an extensive hearing (resulting in a 226-page transcript) on September 18, 2012. Most of the hearing focused on the taxpayers' relationships with Chatham and Terrill.

The Court of Tax Appeals issued an order of more than 80 pages in each taxpayer's case on October 11, 2012. It concluded that it had no subject-matter jurisdiction because the appeal notices weren't properly signed. But the orders also made several other conclusions:

- That even though Chatham had a contingent-fee interest in the appeals, the taxpayers remained the real parties in interest in their tax appeals;
- That the written contracts between Chatham and the taxpayers were void as against public policy—specifically, that they were champertous (the result of "an officious intermeddler['s]" involvement in a lawsuit in exchange for part of the proceeds, Black's Law Dictionary 279 [10th ed. 2009]) but that the champertous nature of these agreements did not eliminate the Court of Tax Appeals' jurisdiction over the appeals;
- That if the Court of Tax Appeals had proper jurisdiction over the appeal, it would require that the taxpayers proceed without their chosen representatives (Chatham and Terrill) because the court concluded that Chatham had engaged in the unauthorized practice of law, that Terrill had assisted Chatham in doing so, and that Terrill appeared to have violated several provisions of the Kansas Rules of Professional Conduct;
- That it found "general reasons to question the credibility of [Jerry W.] Chatham's testimony and Terrill's statements regarding whether or not the replacement decisions [replacing Terrill with another attorney in some cases] were economically motivated." (Jerry W. Chatham is a principal and owner of J.W. Chatham & Associates, which we generally reference in this opinion as Chatham.)

The taxpayers responded on October 29, 2012, with a request for reconsideration and a motion to strike at least those portions of the order that addressed issues involving attorney-ethics rules and the contractual relationship between the taxpayers, Chatham, and Terrill. The Court of Tax Appeals granted reconsideration, but on February 20, 2013, it issued a 175-page order in each case that reached the same basic conclusions as the earlier order.

Some of the conclusions went further than the initial order. For example, the Court of Tax Appeals now concluded that Terrill had actually violated several of the attorney-ethics rules, not merely appeared to have violated them. In addition, the court made extensive factual findings about why it did not find the testimony of Jerry Chatham or the representations made by Terrill at the September 18 hearing credible.

We must note one other procedural item specific to these appeals. After the initial order of the Court of Tax Appeals, the taxpayers filed a motion on November 2, 2012, seeking the disqualification of each of the judges on the Court of Tax Appeals. The motion generally alleged bias against Chatham and Terrill "and thus a bias against Taxpayer." In support, Terrill submitted an affidavit stating that two members of the Court of Tax Appeals had filed an ethical complaint against her on October 4, 2012, before the court had reached its decision, alleging she had committed "possible violations" of ethics rules. The Court of Tax Appeals denied the recusal motion in an order issued November 27, 2012. That court found no legal basis for recusal. It also concluded that it was an independent body with no mechanism to provide substitute judges; accordingly, it concluded that the rule of necessity would require its judges to hear the appeals even if there were some valid basis for disqualification.

That completes the procedural background we find necessary to frame the issues we must decide. We should also note, though, that the 2014 Kansas Legislature has made changes to the statutes governing the Court of Tax Appeals. In fact, even the name of that

6

tribunal has been changed—reverting back to its former name, the Board of Tax Appeals. See L. 2014, ch. 141. None of the parties to this appeal have filed anything with our court suggesting that these legislative changes should have any impact on the issues now before us. We have not considered those legislative changes and accordingly express no opinion on what impact, if any, they may have on remand.

ANALYSIS

I. *These Tax Appeals Should Not Have Been Dismissed for Lack of Jurisdiction*.

The starting point for our analysis is whether the Court of Tax Appeals was correct in dismissing the appeals for lack of subject-matter jurisdiction. Since there are some differences in the statutory provisions regarding the court's small-claims division and its regular division, we will discuss separately the appeals that began in each division.

For the appeals of MBS Barkley 1031, ACDC Investments, and the Kathy L. Lyerla Living Trust, which began in the small-claims division, we conclude that jurisdiction was proper based on our separate decision today in *In re Tax Appeal of Rakestraw Brothers*, 50 Kan. App. 2d ___ (No. 110, 219, this day decided). As we explain in greater detail there, a statute applicable to the small-claims division, K.S.A. 2011 Supp. 74-2433f(f), provided that a taxpayer could appear there through a tax representative or agent. 50 Kan. App. 2d at ___, slip op. at 4-5. This statute provides that attorneys, certified public accountants, and a "tax representative or agent" may represent taxpayers in the small-claims division. Another subsection, K.S.A. 2011 Supp. 74-2433f(e), provided that the notice of appeal be "in the form prescribed by the rules" of the Court of Tax Appeals. We concluded that a fair reading of these provisions together would allow any of the parties listed in subsection (f) to file the appeal notice, 50 Kan. App. 2d at ___, slip op. at 8-9, and that even if there were some problem with the signature, it would be a correctible error, not a jurisdictional defect. 50 Kan. App. 2d at

7

___, slip op. at 9-10, 12. Based on the legal ruling we reached in *Rakestraw Brothers*, we conclude that the Court of Tax Appeals wrongly dismissed the appeals of MBS Barkley 1031, ACDC Investments, and the Kathy L. Lyerla Living Trust.

We turn now to the appeals of Flik and THF College Boulevard, which were filed in the regular division. In that division, the provisions of K.S.A. 2011 Supp. 74-2433f(f) that allow non-attorneys to represent taxpayers do not apply. And Kansas administrative agencies "may require a corporation or other artificial person to participate by counsel." K.S.A. 77-515(c).

But the rules of the Court of Tax Appeals allowed at least some non-attorneys to represent corporations or other artificial entities. One rule provided an authorized employee or officer of a corporation or entity could participate in proceedings on behalf of the corporation or entity, so long as the representative didn't engage in the practice of law. K.A.R. 94-5-6(b), (d) (2011 Supp.). The rule also gave the Court of Tax Appeals the option to require a corporation or other artificial entity to participate through an attorney. K.S.A. 94-5-6(e) (2011 Supp.).

K.A.R. 94-5-6 (2011 Supp.), which we have just discussed, defines who may participate in a proceeding on behalf of an artificial entity: an employee or officer. A separate rule, K.A.R. 94-5-4(b) (2011 Supp.), provides that notices of appeal be "signed by the party or the party's attorney." Even if we assume that an artificial entity's employee or officer counted as "the party" under K.A.R. 94-5-4(b) (2011 Supp.), the signers of the notices of appeal for Flik and THF College Boulevard still wouldn't have had the authority to sign the notices since they weren't employees or officers of the taxpaying entities.

We are left, then, with timely filed notices of appeal signed by people not authorized under Court of Tax Appeals rules to do so. The question is whether this

8

deprives the Court of Tax Appeals of jurisdiction over the appeals, and we conclude that it does not.

First, the requirements providing who may—and may not—sign a notice of appeal come only from Court of Tax Appeals regulations. As we explain in *Rakestraw Brothers*, an agency may not create a jurisdictional requirement for itself unless the legislature has specifically authorized it to do so, and nothing in K.S.A. 2011 Supp. 74-2437, the authorizing statute for K.A.R. 94-5-4 (2011 Supp.) and K.A.R. 94-5-6 (2011 Supp.), suggests that the Court of Tax Appeals has the authority to adopt jurisdictional requirements by regulation. See 50 Kan. App. 2d at ___, slip op. at 7-8.

Second, the Court of Tax Appeals regulations make clear that the signature requirement is not jurisdictional. A separate provision of K.A.R. 94-5-4(b) (2011 Supp.) provides that "[i]f a pleading is filed with insufficient information or is otherwise deficient, the pleading *may be* rejected by the court or *may be accepted* by the court, with supplementation by the parties required by the court." (Emphasis added.) As we explain in *Rakestraw Brothers*, a provision giving the body discretion whether to accept a form that is deficient in some way is not a jurisdictional provision; if there's no jurisdiction, the court has no choice about whether to proceed. See 50 Kan. App. 2d at ___, slip op. at 9-10.

Third, another Court of Tax Appeals rule, K.A.R. 94-5-1(a) (2011 Supp.), provides that to the extent that other statutes do not specifically apply, the Kansas Code of Civil Procedure shall apply to proceedings in the regular division. That brings into play K.S.A. 2011 Supp. 60-211(a), which provides for striking an unsigned court paper only if the failure to sign is not corrected after being brought to the party's attention. See *Rakestraw Brothers*, 50 Kan. App. 2d at ___, slip op. at 8. The failure to sign a notice of appeal does not deprive even a judicial court of jurisdiction over that appeal. *Becker v. Montgomery*, 532 U.S. 757, 760, 763-68, 121 S. Ct. 1801, 149 L. Ed. 2d 983 (2001).

9

So the failure to have a proper signature on the notice of appeal does not deprive the Court of Tax Appeals of jurisdiction over an appeal. Further, to the extent the Court of Tax Appeals had discretion in this case to dismiss these taxpayers' appeals under K.A.R. 94-5-4(b) (2011 Supp.), which states that nonconforming appeal notices "may be" rejected, we hold it was an abuse of discretion to dismiss the appeals without first giving Flik and THF College Boulevard an opportunity to correct these errors—just as a court in the judicial branch would be required to do. See *Rakestraw Brothers*, 50 Kan. App. 2d at ___, slip op. at 9-10. We therefore conclude that the Court of Tax Appeals erred when it dismissed these appeals.

II. *The Court of Tax Appeals Exceeded Its Authority When It Considered and Purported to Decide Matters Beyond Its Statutory Jurisdiction.*

As we have set out earlier in this opinion, in addition to determining that it had no subject-matter jurisdiction, the Court of Tax Appeals also addressed several other matters in three of the appeals—including the validity of the contracts between the taxpayers and their representatives, whether the taxpayers' representatives had engaged in (or assisted in) the unauthorized practice of law, and whether the taxpayers' attorney had violated attorney-ethics rules. The taxpayers in those three appeals contend that the Court of Tax Appeals had no authority to address these issues. We agree.

Administrative agencies are created by statute, so they have only the powers granted to them by statute. See *Ft. Hays St. Univ. v. University Ch., Am. Ass'n of Univ. Profs.*, 290 Kan. 446, Syl. ¶ 1, 228 P.3d 403 (2008). The powers of the Court of Tax Appeals are set forth in K.S.A. 2011 Supp. 74-2437, which authorizes it to hear tax appeals and to make the rules needed for handling those appeals:

"The state court of tax appeals shall have the following powers and duties:

10

"(a) To hear appeals from the director of taxation and the director of property valuation on rulings and interpretations by said directors, except where different provision is made by law;

"(b) to hear appeals from the director of property valuation on the assessment of state assessed property;

"(c) to adopt rules and regulations relating to the performance of its duties and particularly with reference to procedure before it on hearings and appeals; and

"(d) such other powers as may be prescribed by law."

In addition to that statute, K.S.A. 2011 Supp. 79-1609 and K.S.A. 79-2005 provide for an aggrieved taxpayer to appeal the appraised value of real property for real-estate tax purposes to the Court of Tax Appeals.

The issue for the Court of Tax Appeals to decide in each of these cases was whether the taxpayer's property value had been correctly assessed. In a property-valuation appeal, the determination of the proper assessed value is the only issue the Court of Tax Appeals is authorized to determine—with one exception.

That exception applies to any administrative agency exercising quasi-judicial authority. Such a body, like the Court of Tax Appeals, may also question its own authority, or jurisdiction, to hear a matter. See *Board of Meade County Comm'rs v. State Director of Property Valuation*, 18 Kan. App. 2d 719, 726-28, 861 P.2d 1348, *rev. denied* 253 Kan. 856 (1993). Because the Court of Tax Appeals in cases like these has jurisdiction only over appeals brought by taxpayers, it could properly investigate whether the taxpayers on whose behalf these appeals were filed were, in fact, the real parties in interest. See 18 Kan. App. 2d at 726-28. We therefore disagree with the taxpayers' separate contention that the Court of Tax Appeals could not make a real-party-in-interest determination. Our conclusion is supported by the statutory scheme, under which only the "taxpayer" has the right to appeal. See K.S.A. 2011 Supp. 79-1609 and K.S.A. 79-2005.

11

The Court of Tax Appeals has the authority to determine the rights of the taxpayer, not anyone else.

The Court of Tax Appeals ultimately concluded that these taxpayers *were* the real parties in interest in their appeals. Yet it proceeded to address the validity of the contractual agreements between the taxpayers and their representatives, the possible unauthorized practice of law, and possible violations of attorney-ethics rules. The court had no authority to do so:

- Nothing in the Court of Tax Appeals' statutory authority provides that it may determine the validity of contracts between taxpayers and third parties (tax representatives or attorneys) who are not even parties to the tax appeal.

- Nothing in the Court of Tax Appeals' statutory authority provides that it may determine whether someone is practicing law without a license or whether an attorney has violated attorney-ethics rules. The Kansas Supreme Court has the sole power to regulate the practice of law, and it has cautioned that its authority will not be ceded to other branches of government. See *State ex rel. Stephan v. Smith*, 242 Kan. 336, Syl. ¶ 12, 747 P.2d 816 (1987). The Court of Tax Appeals is an agency of the Executive Branch, K.S.A. 2011 Supp. 74-2433a, and it has no statutory authority over these matters.

- None of these matters—even if true—would deprive the Court of Tax Appeals of jurisdiction over these appeals. Thus there was no basis for the Court of Tax Appeals to issue rulings about them.

We do not suggest that members of the Court of Tax Appeals are prohibited from reporting potential violations of attorney-ethics rules to the proper authorities. Indeed, lawyer members of the court may have a duty to do so under the Kansas Rules of Professional Conduct, KRPC 8.3 (2013 Kan. Ct. R. Annot. 653). But the Court of Tax Appeals as a body has no authority to decide such matters. Even an administrative agency exercising quasi-judicial powers has only the power the legislature has given it. Thus,

12

while it may examine whether it has authority, or subject-matter jurisdiction, to consider an issue, it may not go into other unrelated matters that it isn't specifically authorized by statute to decide. See *In re Tax Appeal of Trickett*, 27 Kan. App. 2d 651, 656, 8 P.3d 18 (2000).

Our conclusion is reinforced by two additional points. First, key parties to these additional findings—Chatham and Terrill—were not parties to the case before the Court of Tax Appeals. Accordingly, no conclusion made by the Court of Tax Appeals could be binding upon them. Second, as the Connecticut Supreme Court concluded in *Robertson v. Stonington*, 253 Conn. 255, 259-63, 750 A.2d 460 (2000), even if there were some impropriety in the contractual arrangement between a taxpayer and its attorney or representative, public policy is best served by having the Court of Tax Appeals stick to tax matters, while leaving questions about the unauthorized practice of law or champertous agreements involving attorneys to the attorney-discipline process.

As the Connecticut court noted, two public policies are at issue—"the public policy against the unauthorized practice of law, and the public policy in favor of fair and accurate taxation." 253 Conn. at 260-61. The court noted that "no public policy . . . discourages bringing valid tax appeals" and that there was no evidence in its case that the tax-consulting firm involved there "promotes frivolous tax appeals." 253 Conn. at 261. The court then noted that the tax-consulting firm was not a party to the tax appeal, so that "[i]t would be inappropriate . . . to make [an unfavorable] determination about [its] actions because [it] is not a party to the action before this court, and is not in any position to defend [itself] against the defendant's accusations." 253 Conn. at 261. Accordingly, the court held that whether the tax-consulting firm was engaging in the unauthorized practice of law was an issue for disciplinary authorities and not for the tax-appeal process. 253 Conn. at 261-63.

13

Here too, the Court of Tax Appeals has expertise and authority over tax matters, not champerty, the unauthorized practice of law, or attorney-ethics rules. No impropriety in the arrangements between the taxpayers and its representatives would remove the government's obligation to tax fairly. See *Robertson*, 253 Conn. at 263. The Court of Tax Appeals' authority did not extend to the validity of the arrangements between the taxpayers and their representatives (and attorney) or to attorney-ethics compliance. Accordingly, we reverse and vacate its findings and rulings on these subjects, including the ruling that in the event these appeals were to proceed, the taxpayers would have to be represented by different counsel, representatives, or both.

III. *The Judges of the Court of Tax Appeals Who Previously Ruled on the Appeals of Three Taxpayers Should Be Recused from Further Participation.*

The three taxpayers discussed in the preceding section (the subject of extensive findings that we found beyond the Court of Tax Appeals' jurisdiction) moved to disqualify each of the three judges on the court after it issued its initial ruling. These taxpayers argued that these judges instituted broad proceedings beyond the court's authority, interfered with the taxpayers' choice of counsel and tax representative, and made credibility findings about the attorney and tax representative that would cause a reasonable person to question whether these judges would give the taxpayers a fair hearing. The judges denied the motion to disqualify themselves.

Judges of the Court of Tax Appeals are required to follow the Kansas Code of Judicial Conduct. K.S.A. 2011 Supp. 74-2433(a); see Rule 601B (2013 Kan. Ct. R. Annot. 725). It requires that a judge be disqualified if the judge's "impartiality might reasonably be questioned" or when the judge "has a personal bias or prejudice concerning the party or the party's lawyer." Rule 2.11(A)(1) (2013 Kan. Ct. R. Annot. 741). Personal bias does not include views held by a judge based on matters that arise during litigation or views on legal issues. *State v. Foy*, 227 Kan. 405, 411, 607 P.2d 481 (1980). But a

14

hostile feeling, antagonism, or animosity toward one of the litigants or their attorney is a personal bias requiring disqualification. 227 Kan. at 411; see *State v. Reed*, 282 Kan. 272, Syl. ¶ 3, 144 P.3d 677 (2006). Merely reporting an attorney to disciplinary authorities for an apparent violation of attorney-ethics rules normally does not constitute personal bias; judges have a duty to report such issues in appropriate cases. See *United States v. Mendoza*, 468 F.3d 1256, 1261-63 (10th Cir. 2006).

In this case, however, we conclude that the impartiality of these judges might reasonably be questioned. Although the Court of Tax Appeals immediately signaled that it might lack the authority to consider the taxpayers' appeals at all, it launched an inquisition into matters well beyond the limited question of whether the real parties in interest were before it. More significantly, the judges unanimously concluded that the sworn testimony of Chatham and the representations of attorney Terrill lacked credibility. The taxpayers would reasonably wonder whether these judges could give them a fair hearing while Chatham and Terrill continued to provide the taxpayers representation on remand.

In most cases, a judge's findings in the course of a lawsuit—even credibility findings—are not cause for disqualification. See *Foy*, 227 Kan. 405, Syl. ¶ 3. Here, however, the findings were that the chosen attorney and tax representative for these taxpayers lacked credibility—and the findings came in an inquiry initiated solely by the court itself that went far beyond its statutory authority. Under these facts, a reasonable person would question the ability of these judges to continue impartially in this case on remand. We therefore conclude that their disqualification should be ordered under K.S.A. 2013 Supp. 77-621(c)(8) on the ground that their failure to recuse under these circumstances was unreasonable.

A reasonable person, considering this situation, would look at whether the parties to this appeal—the taxpayers—could have confidence that the judges were, in fact,

impartial. It is important that those appearing in our courts have confidence that they will receive a fair hearing. See *In re Marriage of Underwood*, No. 104,315, 2011 WL 6942931, at *5 (Kan. App. 2011) (unpublished opinion); *State v. Bennett*, No. 96,591, 2008 WL 588138, at *2 (Kan. App. 2008) (unpublished opinion); Tyler, Why People Obey the Law (2d ed. 2006). We do not know that the judges in this case could not set aside their previous findings to provide a fair hearing on remand. We simply conclude that a reasonable person would justifiably lack confidence in their impartiality, and that's sufficient to make their failure to recuse unreasonable.

We should note that the judges refused to disqualify themselves in part based on the rule of necessity. Under that rule, a judge who otherwise would be disqualified may be required to continue because otherwise no judge would be available. See Geyh, Alfini, Lubet & Shaman, Judicial Conduct & Ethics § 4.04 (5th ed. 2013). The judges assumed for the purpose of their ruling that there was no authority to provide replacement judges in the event of their disqualification.

In the present posture of this appeal, however, we need not determine whether the rule of necessity precluded the disqualification of these judges. Since the court's original ruling, one of its members has been replaced, and the court also has a chief hearing officer who is authorized by statute to act as a pro tem judge. See K.S.A. 2011 Supp. 74-2433; L. 2014, ch. 141, sec. 2. While the court must act with the vote of at least two members, it has one regular member and one pro tem member available who did not participate in the original proceedings. Thus, it now has the ability to act on these appeals without the participation of any of the judges whose disqualification was sought by the taxpayers.

Because of these changes while this appeal has been pending, we have not thoroughly reviewed all potential authorities under which the Governor might appoint pro tem judges because, given the current makeup of the court, it is not necessary for us to do

16

so. We do not foreclose the possibility that additional pro tem judges may be appointed to the Court of Tax Appeals. See K.S.A. 2011 Supp. 77-514(e), (f); K.S.A. 2011 Supp. 74-2433; L. 2014, ch. 141, sec. 2; see also *Johnson v. Darr*, 114 Tex. 516, 517, 272 S.W. 1098 (1925) (noting that case was decided entirely by pro tem judges after all regularly appointed judges were disqualified).

The County also raised three other objections to the taxpayers' presentation on appeal of this disqualification issue.

First, it argued that the taxpayers did not follow the provisions of K.S.A. 20-311d, a statute that provides the method for seeking disqualification of a district judge. We find nothing in that statute that would make it applicable to the disqualification of a judge in an administrative hearing. A provision of the Kansas Administrative Procedure Act, K.S.A. 2011 Supp. 77-514(c), applies to such cases, not K.S.A. 20-311d. See K.S.A. 2011 Supp. 74-2426(a); *Westboro Baptist Church, Inc. v. Patton*, 32 Kan. App. 2d 941, 946, 93 P.3d 718, *rev. denied* 278 Kan. 852 (2004).

Second, it argued that the taxpayers failed to file a motion to reconsider the judges' denial of the recusal motion. The County cites K.S.A. 2011 Supp. 74-2426(b), which provides that "[n]o final order of the [Court of Tax Appeals] shall be subject to review . . . unless the aggrieved party first files a petition for reconsideration of that order . . . ." In this case, the motion to disqualify the judges was filed while the taxpayers' motion to reconsider the original order of the Court of Tax Appeals dismissing the appeals and making other findings was pending.

The problem with the County's argument is that the order denying recusal was not a "final order" under K.S.A. 2011 Supp. 74-2426(b). "Final order" is synonymous with "final agency action." *Norris v. Kansas Employment Security Bd. of Review*, 50 Kan. App. 2d 69, 76-77, 321 P.3d 28 (2014). And the final agency action is its determination

of the substantive rights of the parties before it, such as the ruling on the taxpayers' valuation appeals, not its procedural rulings along the way. The Kansas Judicial Review Act separately defines "final agency action" and "nonfinal agency action," including as nonfinal those "part[s] of an agency . . . process that the agency intends . . . to be . . . procedural . . . ." K.S.A. 77-607(b)(2). The final agency action in this case initially was its original order denying relief to each of the taxpayers. The taxpayers sought reconsideration of that final agency action as required by K.S.A. 2011 Supp. 74-2426(b). No further action was required to preserve the judicial-disqualification issue, a purely procedural matter, for judicial review.

Third, it argued that a court has no authority to remove a judge of the Court of Tax Appeals. The County based its argument on the separation-of-powers doctrine, arguing that a court cannot remove an administrative-law judge in the Executive Branch. But the County confuses what is actually at issue in this case. We are not called upon to remove any judges from the Court of Tax Appeals; we are only called upon to determine whether any of these judges should be disqualified from further participation in this appeal. The legislature has clearly indicated that Court of Tax Appeals judges may be disqualified from a particular proceeding for bias, prejudice, or personal interest. See K.S.A. 2011 Supp. 77-514(b), (c); K.S.A. 2011 Supp. 74-2426(a).

We reverse the decision of the Court of Tax Appeals in each of the appeals, vacate its unauthorized findings and rulings on the non-tax issues, and remand the cases with directions for further proceedings consistent with this opinion.

18